Fred Cantu GUERRERO, Appellant,

v.

The STATE of Texas, Appellee.

No. 3-85-326-CR.

Court of Appeals of Texas,
Austin.

Nov. 12, 1986.
Rehearing Denied Dec. 10, 1986.

**234**

Roy E. Greenwood, Austin, for appellant.

Ronald Earle, Dist. Atty., Ashton Cumberbatch, Jr., Asst. Dist. Atty., Austin, for appellee.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

BRADY, Justice.

Appellant was convicted of murder by a jury and punishment assessed at 45 years confinement in the Texas Department of Corrections, upon an affirmative finding of use of a deadly weapon. The case against the appellant consisted solely of circumstantial evidence. Upon a review of the record, this Court concludes a reasonable hypothesis of accidental death could be drawn from the evidence and that the State failed to disprove this hypothesis. We will reverse the judgment.

Appellant and the deceased had been living together for several months. At approximately eight o'clock on the evening of March 2, 1985, the victim, whom the appellant called his wife, was fatally injured when a small caliber pistol discharged striking her in the face. These events occurred at an apartment shared by the victim and appellant. The only other persons present at the scene were two children, ages one and two years. According to neighbors in the adjoining apartments, immediately after a shot was heard appellant came running out of his apartment to summon help stating his wife had been shot. He was carrying the two small children in his arms and, according to the witnesses, was visibly emotionally distraught.

Police were summoned immediately, and appellant was not able to explain what happened, stating his back was turned when the gun discharged. Appellant further stated he had just returned to the apartment after attempting to collect some money from a friend. After riding his bicycle home, he went upstairs to the apartment and knocked on the door. The deceased inquired who it was and had to unlock two or three locks to let him in. When he entered their home he saw his wife's gun laying on the coffee table and scolded her for leaving it in reach of the children. He then picked up the gun and placed it on the top portion of the couch. At the time she was shot, appellant stated he was pushing his bicycle towards the kitchen and only turned to look at his wife when he heard the gun discharge.

There was also testimony by the neighbors concerning the events just before and after the shooting. The occupant of the apartment next door testified she heard some banging and voices next door and concluded it was an argument because arguments were a frequent occurrence around the apartment complex. A witness from the other adjoining apartment stated he heard babies crying and the words "no Babe, please" just after the shot rang out; his wife, however, testified the statement was made before the shot. Significantly, these and other witnesses all agreed the appellant emerged from the apartment almost immediately after the shooting and sought help for the victim.

Police who arrived at the scene just after emergency personnel had removed the victim testified that large splatters of blood were left on the wall. One officer, trained in blood splatter analysis, stated some of the blood came from the victim's head hitting the wall, and some could have been

spread by emergency workers, but that the rest of the blood fell from her as she collapsed. Later expert testimony indicated the gun was against the victim's face when it discharged. It is significant to note that although numerous persons saw and conversed with appellant immediately after the shooting, there was no testimony or any other evidence of blood on his clothes.

In addition to the neighbors and officers on the scene, several experts testified establishing that: 1) no identifiable fingerprints were found on the gun; 2) the gun functioned properly but it was possible it could have discharged accidently; 3) tests for gun powder traces on both appellant's and victim's hands were negative but that this was common for guns of that type; 4) a small powder burn was found on the victim's right index finger; 5) that the trajectory of the bullet was almost vertical; 6) and there were bruises on the victim's face but that they could have been caused in the fall. Additional testimony revealed one of the bruises pre-dated the fall but was probably a "hickey" or mark of passionate affection.

There was also evidence of prior statements by appellant concerning the incident. This evidence consisted of testimony by the victim's relatives who stated that at the funeral, appellant did not want to discuss what happened, saying only that he would never hurt her and that he would tell them about it later. A friend of the victim, Ms. Adams, related that appellant later explained to her what occurred and the story she repeated was substantially the same as the statement given the police and testimony by appellant at trial. This witness also testified the appellant told her he had a bullet in his pocket just before the shooting and that the victim saw this while he gave her a quarter for a phone call; this statement coincided with information appellant gave police, although no bullet was found on appellant and he stated he did not know what happened to it. The appellant also told the friend the deceased had bullets in her pocket which was confirmed by testimony of an emergency attendant.

A Mr. Felger, who had never met the appellant before, was also present when the above statements were made. Mr. Felger claimed the appellant told him the shooting occurred during an argument. This witness also testified appellant said "sometimes that she made him so mad that he could hurt her." This is the only pre-trial statement appellant denied making.

The appellant testified in his own defense. His testimony revealed he had only a ninth grade education. Although confusing at times, he did not contradict any material pre-trial statements other than the statement to Mr. Felger. He consistently maintained his back was turned when the shooting occurred and that he believed it was an accident.

Other testimony showed the appellant and the victim had just moved into the apartment and that there were numerous boxes and items laying about the floor where the victim was standing at the time of the shooting. Particularly significant is the fact that a small throw rug lay at her feet indicating she may have tripped. Indeed, the gun itself ended up under this rug. Also beside the victim was a portable television set which was apparently disturbed in the fall.

This Court examined a number of factors in determining the sufficiency of the evidence to show intentional murder. 1) the scene at the appellant's apartment did not show any signs of a struggle; 2) although appellant admitted rebuking the deceased for leaving the gun out, there was no evidence of a violent argument, other than an unidentified banging on the wall; 3) the only signs on the deceased's body indicating physical assault were bruises which could have been caused by her fall and a passion mark; 4) there was no confession and the appellant's story remained substantially consistent throughout the investigation and trial; 5) the only *res gestae* statements made by appellant were "No babe, please." and "Somebody help me. My wife has been shot."; 6) demeanor of appellant immediately after the incident was shock

and hysteria and thereafter full cooperation with police officers; 7) prior relationship of the parties did not indicate any significant fighting or trouble; 8) testimony concerning the amount of blood expelled from the victim and the trajectory of the bullet make it extremely unlikely appellant could have been near her and not had blood splattered on him; 9) while it appears tests for gun powder are typically negative with this sort of gun, the only powder marks discovered were on the victim; 10) there were no identifiable fingerprints on the gun; 11) the State's attempt to rebut other reasonable hypotheses consisted primarily of extensive testimony indicating it was not a suicide.

■ It is well established that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused; proof amounting only to a strong suspicion is insufficient. *King v. State*, 638 S.W.2d 903, 904 (Tex.Cr.App.1982); *Wright v. State*, 603 S.W.2d 838, 840 (Tex.Cr.App. 1979).

■ The State must meet its burden of proof by logically excluding all reasonable hypotheses other than the appellant's guilt before a conviction may be sustained. The rule set out in *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr.App.1983) and its progeny, is that if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding. As Judge McCormick stated in his concurring opinion in *Carlsen:*

> I write to emphasize application of the 'exclusion of outstanding reasonable hypotheses' analysis, as stated by the majority, one criteria which may be applied in arriving at the answer to the ultimate result ... Logic dictates that if there is a 'reasonable hypotheses' other than guilt of the accused, then it cannot be said that the guilt has been shown 'beyond a reasonable doubt.'

*Id.* at 450.

■ In the case at bar, the State's evidence merely shows the appellant was

present when the shooting occurred. The evidence also showed the deceased was surrounded by many items over which she could have tripped discharging the gun accidentally. Furthermore, the nature of the wound and the amount of blood splattered about the scene indicates anyone in close proximity would also have been hit with blood. The State's witnesses all agreed appellant emerged from the apartment immediately after the shooting but none testified he had blood on him. It is a reasonable hypothesis that this shooting could have occurred accidentally, and this Court finds the State failed to rebut that hypothesis.

Judgment of the trial court is therefore reversed and a judgment of acquittal entered. The indictment is also ordered dismissed, and appellant ordered immediately released from further confinement of any kind.