PEOPLE v MARSH

Docket No. 106033. Submitted March 7, 1989, at Lansing. Decided
    May 15, 1989.

Tony Dale Marsh was convicted of first-degree felony murder by a
    jury in Oakland Circuit Court. Defendant subsequently pled
    guilty to being an habitual offender, fourth offense, and was
    sentenced to life imprisonment, John N. O'Brien, J. Defendant
    appealed, claiming inter alia that the trial court should not
    have admitted into evidence the expert testimony of a dentist
    regarding identification of defendant on the basis of an analysis
    of defendant's dentition and a bite mark on the victim's body
    without first conducting a hearing to determine whether bite-
    mark analysis has gained general acceptance in the scientific
    community.

The Court of Appeals *held:*

1. The science of bite-mark analysis has gained general
    acceptance in the scientific community. Therefore, a hearing
    regarding its general acceptance need not be conducted prior to
    the admission of a dental expert's bite-mark comparison testi-
    mony.

2. Defendant made no objection at trial when the dentist was
    ruled qualified to testify as an expert and defendant has,
    therefore, waived appellate review of the claim that the dentist
    was not qualified.

Affirmed.

1. CRIMINAL LAW — IDENTIFICATION — BITE-MARK ANALYSIS — EVI-
    DENCE.

The science of bite-mark analysis has gained general acceptance
    in the scientific community; a hearing regarding its general
    acceptance need not be conducted prior to the admission at
    trial of a dental expert's testimony regarding the identification
    of a defendant based on an analysis of the defendant's dentition
    and bite marks consistent therewith.

REFERENCES

Am Jur 2d, Appeal and Error §§ 601, 602; Expert and Opinion
    Evidence §§ 122 *et seq.*
Admissibility of evidence tending to identify accused by his own
    bite marks. 77 ALR3d 1122.

2. EVIDENCE — APPEAL — FAILURE TO OBJECT.

 Failure to object at trial to the admission of evidence precludes appellate review absent manifest injustice (MRE 103[a][1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Divison, and *Graham K. Crabtree,* Assistant Prosecuting Attorney, for the people.

*Leonard A. Peres,* for defendant on appeal.

Before: SHEPHERD, P.J., and CYNAR and SAWYER, JJ.

SHEPHERD, P.J. Following a jury trial, defendant was convicted of first-degree felony (criminal sexual conduct) murder, MCL 750.316; MSA 28.548. Defendant then pled guilty to being a fourth-felony habitual offender, MCL 769.12; MSA 28.1084. He was sentenced to life imprisonment and now appeals as of right. The sole issue raised presents a question of first impression for this Court, specifically, the admissibility of bite-mark evidence in light of the standards for novel scientific evidence set forth in *Frye v United States,* 54 US App DC 46; 293 F 1013 (1923), and adopted in this state. *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), and see *People v Young,* 418 Mich 1, 24; 340 NW2d 805 (1983). We hold that the science of bite-mark analysis is sufficiently established that a trial court may admit the evidence without holding a *Davis-Frye* hearing.

On March 18, 1987, at about noon, the nude body of the victim was found on a beach at Upper Straits Lake in the City of Walled Lake. The body was laying face down, partially in the water and partially on the shore. An autopsy performed the next day by Dr. Bill Brooks placed the time of

death in the early morning hours of March 18. The cause of death was manual strangulation. Further, there was evidence that the victim had been beaten and sodomized either at the time of death or immediately thereafter.

Because Dr. Brooks observed what appeared to be a bite mark on the victim's left breast, he requested that Dr. Richard Fox, a forensic odontologist, examine the body. Dr. Fox commenced his examination the same day. He took photographs and an impression of suspected bite marks and then removed the tissue itself for further study. A tissue sample was sent to another doctor to examine under a scanning electron microscope for cellular damage. Where cellular damage is observed, and the damage (indenture) is severe enough, a comparison of the cellular damage to a particular tooth may lead to a positive identification on whether the tooth made the mark.

Because no cellular damage was observed, Dr. Fox did his analysis by making a comparison between an enlarged photograph of the surface marking on the skin and a tracing of defendant's bite mark. Dr. Fox reproduced defendant's bite mark through the use of impressions, x-rays and other techniques. First, he took photographs, impressions, and a wax bite of defendant's teeth. Next, Dr. Fox used the impressions to make a reproduction of defendant's upper and lower teeth. The reproduction was then used to make impressions in wax. A mixture of alcohol and silver filling material was then brushed into the indentations. When the material dried, x-rays were used to make tracings of the bite-mark impression on clear acetate. Once the tracings were made and checked for accuracy, they were superimposed upon the enlarged photographs of the suspected bite marks on the victim's skin.

At trial, the photographs, impressions and other materials used by Dr. Fox in the comparison process were admitted into evidence. Further, Dr. Fox expressed his opinion that the surface markings on the skin were consistent with bite marks and that the marks left by defendant's teeth in wax were consistent with the marks in the photographs. On cross-examination, Dr. Fox was candid about the difficulty skin, as a medium, poses for bite-mark analysis. Dr. Fox also concluded that he could not say with reasonable certainty that the marks were made by defendant's teeth. However, he opined that there were two marks that were consistent with defendant's teeth and that there was no discrepancy in the pattern of the marks which would totally rule out defendant.

On appeal, defendant contends that the trial court should have held a *Davis-Frye* hearing before admitting Dr. Fox's testimony. We disagree.

Under MRE 702, the rule permitting expert testimony where "the court determines that recognized scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," the *Davis-Frye* standard is applied to determine if novel scientific evidence has gained general acceptance in the scientific community. *People v King,* 158 Mich App 672, 675; 405 NW2d 116 (1987). Proof of acceptance must be established by disinterested and impartial experts. *Id.,* p 675. The central purpose of the *Davis-Frye* standard "is to prevent the jury from relying on unproven and ultimately unsound scientific methods." *People v Gonzales,* 415 Mich 615, 623; 329 NW2d 743 (1982).

Although an issue of first impression in this Court, the science of bite-mark analysis has been extensively reviewed in other jurisdictions. The admissibility of the evidence has been consistently

upheld without the need for a *Davis-Frye* type hearing. In *Hadley v State,* 515 So 2d 121 (Ala Crim App, 1987), the Alabama Court of Criminal Appeals held that the admissibility of a dental witness' bite-mark analysis does not depend on meeting the *Davis-Frye* standard. The *Hadley* court, in part, relied on the decisions in other jurisdictions:

> In a recent bite mark case of first impression in the State of Wisconsin, the court of appeals observed the following: "Currently, bite mark comparison has received evidentiary acceptance in nineteen jurisdictions. No jurisdiction has rejected the admission of such evidence." *State v Stinson,* 134 Wis 2d 224, 228, n 2, 397 NW2d 136, 137, n 2 (1986). One of those jurisdictions which accept such testimony is Florida. The Supreme Court of Florida recognizes the *Frye* standard, but in the recent case of *Bundy v State,* 455 So 2d 330, 349 (Fla, 1984), cert den, 476 US 1109, 106 S Ct 1958, 90 L Ed 2d 366 (1986), rejected the applicability of *Frye* to the admission of bite mark comparison and stated the following:
>
> "The evidence in question is based on the examinations of impressions made by human teeth and their comparison with models of known human teeth for the purpose of determining whether the impressions were or probably were or could have been made by a particular individual. Bite mark comparison evidence differs from many other kinds of scientific evidence such as blood tests, 'breathalyzer' tests, and radar (as well as from inadmissible techniques such as the polygraph and voice-print analyses) in that these various techniques involve total reliance on scientific interpretation to establish a question of fact. With bite mark evidence, on the other hand, the jury is able to see the comparison for itself by looking directly at the physical evidence in the form of photographs and models. *People v Sloane,* 76 Cal App 3d 611; 143 Cal Rptr 61 (Cal Ct App, 1978); *People v*

*Marx,* 54 Cal App 3d 100; 126 Cal Rptr 350 (Cal Ct App, 1975).'' [*Hadley, supra,* pp 130-131.]

Subsequently, in *State v Armstrong,* 369 SE2d 870, 875-877 (W Va, 1988), the West Virginia Supreme Court of Appeals took judicial notice of the general reliability of bite-mark evidence stating:

> *All* of the twenty-one jurisdictions which have specifically addressed this question in a reported opinion, where a qualified expert was involved, have held bite mark evidence to be admissible for positive identification purposes, and the general reliability of bite mark comparison techniques has been sufficiently established, such that a hearing in each case to establish the general reliability thereof is not necessary. The courts have rejected challenges to bite mark evidence based upon constitutional, evidentiary and scientific arguments. . . .
>
> While there is no unanimity of opinion among forensic dentists as to the best bite-mark comparison techniques or as to the minimum number of points of identity between the bite mark and the suspect's dentition, ''forensic odontology, inclusive of bite mark identification, is an exact science. It is exact in the sense that through acceptable scientific procedures [requiring a skilled expert], an expert can form an opinion useful to the courts in their quest for the truth.'' *State v Sager,* 600 SW2d 541, 569 (Mo Ct App, 1980), application to transfer denied (Mo, July 15, 1980), cert den, 450 US 910; 101 S Ct 1348; 67 L Ed 2d 334 (1981). All of the experts agree it is easier to ''rule out'' a suspect by bite-mark comparison techniques than it is to ''rule in'' a suspect thereby, as *one* unexplained inconsistency between the bite mark and the suspect's dentition means the suspect could not have made the bite mark. . . .

\* \* \*

Based upon our review of the authorities, this

Court holds that the general reliability of bite-mark evidence as a means of positive identification is sufficiently established in the field of forensic dentistry that a court is authorized to take judicial notice of such general reliability without conducting a hearing on the same. When the witness at trial has the requisite skill and experience and demonstrates the accuracy and reliability of the models, photographs and any other physical evidence utilized in that particular case as bite-mark evidence, the trial court may properly admit the opinion testimony of the expert witness as a valuable aid to a jury in understanding the evidence in a criminal case. [Emphasis in original; citations omitted.]

Based on the persuasiveness of the rulings in other jurisdictions, we too hold that the admissibility of a dental witness' bite-mark analysis does not depend on meeting the *Davis-Frye* standard. While the idea of using a bite-mark comparison to identify a perpetrator may seem novel, the scientific procedures used, such as x-rays, impressions and photographs, are not novel and, as in this case, may be submitted to the jury to see the comparison for itself. Accordingly, we find no error in the trial court's admission of Dr. Fox's testimony without conducting a *Davis-Frye* hearing.

Although not raised as a specific issue, defendant also contends that Dr. Fox's qualifications as an expert witness were "questionable." Defendant did not object to Dr. Fox's qualifications at trial. To the contrary, defendant's attorney informed the court: "I want the Court to understand that I am not objecting to his expertise and training and so on in the area of bite-mark analysis. I have reviewed his curriculum vitae."

Absent a specific objection, we will not review alleged evidentiary error unless manifest injustice is shown. *People v Proveaux,* 157 Mich App 357,

365; 403 NW2d 135 (1987); *People v Watts,* 145 Mich App 760, 764; 378 NW2d 787 (1985), lv den 424 Mich 889 (1986); and see MRE 103(a)(1). Since defendant conceded at trial that Dr. Fox was qualified, we find no error and deem this issue waived.

Further, we reject defendant's assertion that Dr. Fox's testimony was the most damaging evidence against him. Dr. Fox's testimony merely indicated that there was some consistency between the suspected bite marks on the victim's skin and defendant's teeth and that defendant could not be ruled out as the originator of the marks. The bite-mark evidence did not positively identify defendant and was not relied on by the prosecutor for this purpose. It was merely one piece of the circumstantial evidence presented by the prosecutor to establish defendant's identity. The jury had an opportunity to review the physical evidence itself and to decide what weight, if any, should be attached to the evidence. There was ample other circumstantial evidence identifying defendant as the perpetrator.

Defendant was placed with the victim at a bar shortly before her death. Although they were not seen leaving together, defendant had informed a friend of his plan to "screw" the victim that night. The medical examiner opined that the time of death was early in the morning, i.e., between 1:00 A.M. and 3:00 A.M., and that the victim had been sodomized. Defendant was seen at home doing the laundry between 4:00 and 5:00 A.M. This was unusual in itself because defendant did not usually do the laundry at that time. Later, when questioned by the police, defendant gave an account of his whereabouts and actions on the night of the murder that was inconsistent with the testimony of other witnesses who had seen him that night. Most damaging of all was the testimony of defen-

dant's longtime friend, Victor Corbett, who stated that defendant had visited him on the evening of March 18, 1987, and that he had related details of the killing which he claimed to have heard from another. Defendant talked about strangulation marks, said something about bite marks on the victim's breast or buttocks, talked about "bad beat marks" and then concluded the conversation with a statement about the victim being sodomized. Other evidence established that defendant could not have heard these details from anyone at the time when the statements were made because the information had not been released to the public or had not yet been discovered.

In light of this evidence, we find no merit in defendant's assertion that Dr. Fox's inconclusive testimony on the suspected bite marks was the most damaging evidence at trial. To summarize, we conclude that the trial court correctly admitted Dr. Fox's testimony without conducting a *Davis-Frye* hearing and that defendant waived any objection to Dr. Fox's qualifications at trial.

Affirmed.