PEOPLE v HAYWOOD

Docket No. 128442. Submitted September 7, 1994, at Grand Rapids. Decided March 6, 1995, at 9:45 A.M. Leave to appeal sought.

David N. Haywood was convicted by a jury in the Calhoun Circuit Court, James C. Kingsley, J., of second-degree murder and was sentenced to forty to sixty years' imprisonment. The defendant appealed.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion in allowing a police detective to testify as an expert on bloodstain interpretation evidence. Established principles of physics, biology, chemistry, and mathematics underlie bloodstain interpretation. Because bloodstain interpretation is based on principles that are neither novel nor contested, testimony concerning bloodstain interpretation may be admitted without need for a hearing pursuant to the *Davis-Frye* rule, *People v Davis,* 343 Mich 348 (1955); *Frye v United States,* 54 US App DC 46; 293 F 1013 (1923). Trial courts may take judicial notice of the general acceptance of bloodstain interpretation by the scientific community. The detective in this case was clearly qualified by knowledge, experience, and training to testify as an expert on bloodstain interpretation.

2. The trial court, in admitting evidence of the defendant's statement to the police, did not clearly err in ruling that, under the totality of the circumstances, the defendant's statement was freely and voluntarily made.

3. The trial court did not err or abuse its discretion in not granting a mistrial or instructing the jury with respect to prejudice claimed by the defendant from testimony by the victim's father that the victim had a black eye while living with the defendant in the past. The challenged testimony is not a ground for a mistrial because it was volunteered by the witness and not elicited through the prosecution's questioning,

REFERENCES

Am Jur 2d, Evidence § 94.

Admissibility, in criminal prosecution, of expert opinion evidence as to "blood splatter" interpretation. 9 ALR5th 369.

and the defendant failed to request a cautionary instruction at trial.

4. The trial court did not abuse its discretion in refusing to direct a verdict of acquittal with regard to the original charge of premeditated murder. There was sufficient evidence of premeditation and deliberation to allow the submission of the first-degree murder charge to the jury.

5. The trial court did not err in not instructing the jury with regard to heat of passion. The defendant did not request such an instruction at trial and none was needed in the absence of a theory of voluntary manslaughter by the prosecution or the defense.

6. The record does not support the defendant's contention that the trial court, in imposing sentence, considered prior misdemeanor convictions for which the defendant had not validly waived his right to counsel. The presentence report indicates that the defendant validly waived counsel for the proceedings that resulted in those convictions, and the transcript of the sentencing hearing indicates that the trial court disregarded those convictions when determining the sentence.

7. The trial court gave adequate reasons for departing from the sentencing guidelines and the sentence imposed does not violate the principle of proportionality.

Affirmed.

EVIDENCE — BLOODSTAIN INTERPRETATION — JUDICIAL NOTICE.

Judicial notice may be taken of the general acceptance by the scientific community of blood spatter or bloodstain interpretation in view of the established principles of physics, biology, chemistry, and mathematics that underlie bloodstain interpretation and the numerous other jurisdictions that have recognized bloodstain interpretation.

State Appellate Defender (by *Ronald E. Steinberg*), for the defendant on appeal.

Before: MacKENZIE, P.J., and GRIFFIN and M. J. TALBOT,* JJ.

GRIFFIN, J. Following a lengthy jury trial, defendant was convicted of one count of second-degree murder, MCL 750.317; MSA 28.549, and was sen-

* Circuit judge, sitting on the Court of Appeals by assignment.

tenced to forty to sixty years' imprisonment. Defendant now appeals as of right. We affirm and hold, inter alia, that the trial courts may take judicial notice of the general acceptance of bloodstain interpretation evidence by the scientific community.

I

This case arises out of the beating death of defendant's girl friend. The victim's death occurred sometime in the early morning hours of June 19, 1989, in the apartment she shared with defendant. The police found the bloodied victim lying in a bathtub. An autopsy revealed that the victim had suffered multiple traumatic injuries consistent with a severe beating. The victim's internal injuries included a subdural hemorrhage surrounding the brain, five broken ribs, a perforation of the small intestine, and a large perforation of the rectum. The victim's primary cause of death was the loss of blood from the perforation of her rectum. The victim's injuries were consistent with being beaten with a bloody brush and broom handle found in the apartment.

At trial, the victim's and defendant's downstairs neighbor, Norval Ingram, testified that he was home during the time of the victim's death. At approximately 12:35 A.M., he began to hear "unusual" noises in the upstairs apartment. Ingram was awakened by the sound of a heavy object hitting the floor. Following that noise, he heard the sound of running water and observed "dirty water" coming through his ceiling. Ingram then heard a "thud" and a "crashing" noise upstairs. The noise continued intermittently.

A short time later, Ingram went upstairs and knocked on defendant's apartment door. He heard

a woman's voice ask if there "was someone at the door." The woman then called out defendant's name and stated that someone was at the door. From behind the apartment door, Ingram heard a man's voice he recognized as defendant's ask him "what [he] want[ed]." In response to Ingram's inquiry concerning the running water, the man told him to "take it up with the landlord." Ingram left and went downstairs to his apartment. Ingram continued to hear loud noises in the upstairs apartment until sometime between 3:00 A.M. and 5:00 A.M.

Detective Michael Van Stratton testified that he was dispatched to the victim's and defendant's apartment at approximately 1:40 P.M. on June 19, 1989. While at the apartment, he observed bloodstains throughout the apartment. Over defendant's objection, Detective Van Stratton testified regarding his analysis of the bloodstains after being qualified as an expert witness in the field of bloodstain interpretation. On the basis of his analysis of the bloodstains, Van Stratton opined that the victim was beaten in several different locations, including the bedroom. Further, he concluded that someone had attempted to wipe up the blood in the apartment.

The prosecutor offered Detective Van Stratton's testimony to contradict defendant's original statement to the police. Defendant had stated that he had gone to sleep in the bedroom earlier in the evening after the victim had left for the evening. He told the police that he was awakened later that night when the victim returned. He stated that he did not discover the victim's injuries until he went into the bathroom and found her in the bathtub early the next morning. In his statement, he also denied attempting to wipe up the blood in the apartment.

II

On appeal, defendant raises a number of challenges regarding the admission of the bloodstain interpretation evidence presented by Detective Van Stratton. Defendant primarily argues that the prosecutor failed to sustain his burden of proving that bloodstain interpretation evidence has gained general acceptance by disinterested experts in the scientific community.

The *Davis-Frye* rule, adopted from *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), and *Frye v United States,* 54 US App DC 46, 47; 293 F 1013 (1923),[1] limits the admissibility of novel scientific evidence by requiring the party offering the evidence to demonstrate that it has gained general acceptance in the scientific community. *People v Young (After Remand),* 425 Mich 470, 473; 391 NW2d 270 (1986); *People v Adams,* 195 Mich App 267, 269; 489 NW2d 192 (1992); *People v Gistover,* 189 Mich App 44, 46; 472 NW2d 27 (1991). General scientific recognition may not be established without the testimony of disinterested and impartial experts whose livelihood is not intimately connected with the new technique. *Young, supra* at 479-480; *People v Tobey,* 401 Mich 141, 145; 257 NW2d 537 (1977); *People v Barbara,* 400 Mich 352, 358, 376; 255 NW2d 171 (1977). The *Davis-Frye* test is applied only to novel scientific techniques or principles. "A party need not show the general acceptance of an already established test." *People*

---

[1] We recognize that in *Daubert v Merrell Dow Pharmaceuticals, Inc,* 509 US —; 113 S Ct 2786; 125 L Ed 2d 469 (1993), the United States Supreme Court held the *Frye* test was superseded by the adoption of FRE 702. In light of our narrow resolution of this issue, we need not address the continued applicability of the *Davis-Frye* test under Michigan jurisprudence. Nevertheless, we note that MRE 702, unlike its federal counterpart, incorporates a "recognized" standard for the admissibility of scientific evidence. See *People v Hubbard,* 209 Mich App 234; — NW2d — (1995).

*v Davis,* 199 Mich App 502, 512; 503 NW2d 457 (1993). See also *People v Marsh,* 177 Mich App 161, 164, 167; 441 NW2d 33 (1989).

The admissibility of expert testimony concerning the interpretation of "blood spatters" or "bloodstains" is an issue of first impression in Michigan. In *Farris v State,* 670 P2d 995, 997 (Okla App, 1983), the Oklahoma Court of Criminal Appeals described this evidence as follows:

> The geometric Blood Stain Interpretation is a method used to reconstruct the scene of the crime. Blood stains are uniform in character and conform to the laws of inertia, contrifugal [sic] force and physics. Study of the blood pattern along with its size and shape helps determine the source of the blood and any movement that might have occurred · after the bloodshed began, including subsequent violent attacks upon the victim.

Because bloodstain interpretation evidence is based upon generally accepted principles in the scientific community, a number of jurisdictions have upheld the admission of the testimony without the need for a *Davis-Frye*-type hearing. In *People v Clark,* 5 Cal 4th 950, 1018; 22 Cal Rptr 2d 689; 857 P2d 1099 (1993), cert den — US —; 114 S Ct 2783; 129 L Ed 2d 894 (1994), the California Supreme Court held that bloodstain interpretation testimony was admissible without proof that the evidence was generally accepted in the scientific community:

> The testimony at issue here raises none of the concerns addressed by *Kelly/Frye.* "The methods employed are *not* new to [science] or the law, and they carry no misleading aura of scientific infallibility." (*People v Stoll* [49 Cal 3d 1136, 1157; 265 Cal Rptr 111; 7S8 P2d 698 (1989)] [psychological profile testimony], emphasis in the original.) In

fact, the admissibility of "blood-spatter" or "blood dynamics" testimony in this state predates our [*People v Kelly,* 17 Cal 3d 24; 130 Cal Rptr 144; 549 P2d 1240 (1976)] decision. (*People v Carter* [48 Cal 2d 737, 750-751; 312 P2d 665 (1957)].) Moreover, neither the experiments conducted in connection with such analysis nor the principles underlying it produce an "aura of scientific infallibility." Rather, it is a matter of common knowledge, readily understood by the jury, that blood will be expelled from the human body if it is hit with sufficient force and that inferences can be drawn from the manner in which the expelled blood lands upon other objects. The *Kelly/Frye* rule is inapplicable.

Additionally, other jurisdictions have upheld the admission of bloodstain interpretation evidence by taking judicial notice of its reliability. In *Lewis v State,* 737 SW2d 857, 860-861 (Tex App, 1987), the Texas Court of Appeals held that bloodstain interpretation testimony offered by a criminologist was admissible, partly on the basis of decisions of other jurisdictions:

> Appellant complains that bloodstain analysis has never been offered in a Texas criminal trial, and observes that, at trial, the State failed to cite any cases approving the technique in other jurisdictions. Judicial recognition of a given technique is a factor in determining general acceptance. *Jones* [*v State,* 716 SW2d 142, 147 (Tex App, 1986)].
>
> This Court may take judicial notice on its own motion of the judicial decisions of other states. Tex R Crim Evid 202. Bloodstain analysis is considered a proper subject of expert testimony in several states. *State v Melson,* 638 SW2d 342 (Tenn, 1982), cert denied 459 US 1137, 103 S Ct 770, 74 L Ed 2d 983 (1983); *State v Hilton,* 431 A2d 1296 (Me, 1981); *People v Erickson,* 89 Ill App 3d 56; 44 Ill Dec 138; 411 NE2d 44 (1980); *People v Carter,* 48

Cal 2d 737, 312 P2d 665 (1957). Such testimony was also admitted in a recent Texas trial, although it is unapparent whether the evidence was challenged. *Guerrero v State,* 720 SW2d 233, 234 (Tex App—Austin 1986, pet. ref'd)

MacDonnell testified that he was aware of "many" other individuals who study in his field. Appellant notes that these other individuals were not named, and suggests that MacDonnell should not have been allowed to establish the general acceptance of his methods by his testimony alone. This rule might be valid in cases where the challenged technique uses untested methods, or where the reliability of the technique is seriously questioned, as is the case with lie detectors or "truth serum." However, MacDonnell's studies are based on general principles of physics, chemistry, biology, and mathematics, and his methods use tools as widely recognized as the microscope; his techniques are neither untested nor unreliable. We hold that MacDonnell's testimony ,was properly admitted.

We find these cases to be persuasive. In our view, the scientific principles underlying the interpretation of bloodstains are neither novel nor untested. Rather, this evidence is based upon established principles of physics, biology, chemistry, and mathematics. Given the overall recognition of this technique in other jurisdictions,[2] we hold that the trial courts may take judicial notice of the general acceptance of such evidence by the scientific community. Accordingly, we conclude that the trial court did not abuse its discretion in admitting Detective Van Stratton's testimony at trial.

To the extent that defendant challenges Detective Van Stratton's qualifications as an expert witness, this argument is without merit. An indi-

---

[2] See anno: *Admissibility, in criminal prosecution, of expert opinion evidence as to "blood spatter" interpretation,* 9 ALR5th 369.

vidual must be qualified by "knowledge, skill, experience, training, or education" to testify as an expert witness. MRE 702. In exercising its discretion, a trial court should not require a proposed expert witness to satisfy an overly narrow test of qualifications. *People v Whitfield,* 425 Mich 116, 122-124; 388 NW2d 206 (1986); *People v Moye,* 194 Mich App 373, 378; 487 NW2d 777 (1992), rev'd on other grounds 441 Mich 864 (1992).

In this case, Detective Van Stratton was clearly qualified by knowledge, experience, and training to testify regarding the bloodstains found in defendant's apartment. He had received over one hundred hours of training in bloodstain analysis and attended five different seminars. Further, he had utilized that training in approximately one hundred previous cases. Finally, Van Stratton indicated that he was familiar with the literature on the subject and teaches a course on bloodstain interpretation to other law enforcement officers. The trial court did not abuse its discretion in allowing Detective Van Stratton to testify as an expert witness at trial.

III

Defendant also argues that his statement to police was constitutionally infirm and should have been suppressed on a number of grounds. Defendant alleges that his statement was involuntary under the totality of the circumstances on the basis of his failure to waive his *Miranda*[3] rights, the deliberate delay of his arraignment, and his severe hangover. We disagree.

When reviewing a trial court's determination of the voluntariness of a statement, we examine the

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

entire record and make an independent determination. *People v Marshall,* 204 Mich App 584, 587; 517 NW2d 554 (1994); *People v Brannon,* 194 Mich App 121, 131; 486 NW2d 83 (1992). Nevertheless, the trial court's findings will not be reversed unless they are clearly erroneous. *Marshall, supra; People v Seymour,* 188 Mich App 480, 482-483; 470 NW2d 428 (1991). In evaluating the admissibility of a statement, we review the totality of the circumstances surrounding the making of the statement to determine whether it was freely and voluntarily made in light of the factors stated by our Supreme Court in *People v Cipriano,* 431 Mich 315, 334; 429 NW2d 781 (1988):

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

In the present case, our independent review of the record reveals that defendant's statements to the police were freely and voluntarily made in light of the factors in *Cipriano.* Defendant's videotaped interview with the investigating officer contradicts his assertion that he failed to waive his *Miranda* rights. Before his interview, defendant was given his *Miranda* warnings. He never requested to speak to counsel or refused to speak

with the investigating officer during his interview. Further, he signed a form waiving his *Miranda* rights. Similarly, defendant's assertion that the police deliberately delayed his arraignment in order to extract a statement from him is equally without merit. The police were precluded from questioning defendant following his arrest on June 19, 1989, because of his extreme inebriation. Finally, we find unpersuasive defendant's argument that his statements were coerced because of his severe hangover. Defendant readily responded to the investigating officer's questions during the interview.

IV

Next, we consider defendant's claim that he was denied a fair trial because of the testimony of the victim's father that she had a "black eye" when she resided with defendant in 1988. Specifically, defendant asserts that the trial court erred in failing to blunt the prejudicial effect of this testimony by granting defendant's motion for a mistrial or by giving a cautionary instruction to the jury.

Defendant's claimed error occurred during the testimony of the victim's father as he was being questioned by the prosecutor. During the prosecutor's questioning concerning the parties' past relationship, the following colloquy occurred:

> *Q.* Did she continue to live with him after that first visit to you [sic] knowledge?
> *A.* For awhile, but she moved off with someone else.
> *Q.* All right.
> *A.* I understand that at the time we visited her she had a black eye . . . .

Following the witness' comments, the trial court overruled defendant's motion for a mistrial, stating:

> The motion is denied. The question was not specifically designed to elicit that answer. Mr. Purdy is not a policeman, he is not held to the same standards in terms of injecting material into this trial. And there is no basis for mistrial and the motion is denied.

The trial court's grant or denial of a mistrial will not be reversed on appeal in the absence of an abuse of discretion. *People v McAlister,* 203 Mich App 495, 503; 513 NW2d 431 (1994); *People v Vettese,* 195 Mich App 235, 245-246; 489 NW2d 514 (1992). A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, *People v Siler,* 171 Mich App 246, 256; 429 NW2d 865 (1988), and impairs his ability to get a fair trial, *People v Barker,* 161 Mich App 296, 305; 409 NW2d 813 (1987). Nevertheless, an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial. *People v Gonzales,* 193 Mich App 263, 266-267; 483 NW2d 458 (1992); *People v Lumsden,* 168 Mich App 286, 299; 423 NW2d 645 (1988); *People v McKeever,* 123 Mich App 533, 538; 332 NW2d 596 (1983).

In this case, the improper comments by the victim's father were not grounds for a mistrial because they were not elicited by the prosecutor's questioning. Instead, the comments were volunteered and were unresponsive answers to proper questions. We agree with the lower court that, unlike the other prosecution witnesses, this witness was not in a position to know that his testimony was improper. Further, we note that the prejudicial effect of the witness' statement was

lessened because he did not refer to defendant as the cause of the victim's injury. Finally, despite defendant's claim that the trial court erred in failing to give the jurors a cautionary instruction, he failed to request such an instruction. Accordingly, we conclude that defendant was not denied a fair trial.

V

Defendant further argues that the trial court erred in denying his motion for a directed verdict with respect to the first-degree premeditated murder charge because there was insufficient evidence regarding premeditation and deliberation. Defendant claims that the erroneous consideration of the improper charge forced the jury to reach a compromise verdict. We disagree.

To establish first-degree premeditated murder, the prosecution must prove that the defendant intentionally killed the victim and the act of killing was deliberate and premeditated. MCL 750.316; MSA 28.548; *People v Wofford,* 196 Mich App 275, 278; 492 NW2d 747 (1992); *People v Saunders,* 189 Mich App 494, 496; 473 NW2d 755 (1991). The elements of premeditation and deliberation may be inferred from all the facts and circumstances surrounding the incident, *People v Berry (On Remand),* 198 Mich App 123, 128; 497 NW2d 202 (1993); *People v Gonzalez,* 178 Mich App 526, 532-533; 444 NW2d 228 (1989), including the parties' prior relationship, the actions of the accused both before and after the crime, and the circumstances of the killing itself, *People v Coddington,* 188 Mich App 584, 600; 470 NW2d 478 (1991); *People v Jackson,* 171 Mich App 191, 199-200; 429 NW2d 849 (1988).

Viewed in a light most favorable to the prosecu-

tion, we conclude that there was sufficient evidence to justify the submission of the first-degree murder charge to the jury. That the killing was deliberate and premeditated can be inferred from the number of weapons used by defendant and the length of time of the victim's beating. The victim's death was not instantaneous. Testimony revealed that the victim died from a severe beating of her entire body that occurred over several hours. Additionally, the evidence establishes that two separate weapons, a brush and a broom handle, were used to beat the victim, giving defendant the time to take a second look and reconsider his decision. Finally, evidence of defendant's attempt to clean up the blood after the killing could be used to infer that he acted with deliberation and premeditation. Under these circumstances, we conclude that the trial court did not abuse its discretion in denying defendant's motion for a directed verdict.

VI

Defendant next contends that the trial court erred in failing to instruct the jury that the prosecution had the burden of proving beyond a reasonable doubt the absence of heat of passion. Defendant argues that this error denied him his due process right not to be convicted unless the prosecution has proven all the elements of the crime beyond a reasonable doubt. However, defendant did not object or request that such an instruction be given. Therefore, our review is limited to the issue whether relief is necessary to avoid manifest injustice to defendant. *People v Van Dorsten,* 441 Mich 540, 544-545; 494 NW2d 737 (1993); *People v Hoffman,* 205 Mich App 1, 22; 518 NW2d 817 (1994). After thorough review of the record, we find no manifest injustice.

At trial, the focus of the defense strategy was on defendant's alibi rather than his mental state at the time of the killing. No evidence was presented regarding heat of passion by defendant. Furthermore, the prosecution argued that defendant was guilty of first-degree premeditated murder rather than voluntary manslaughter. Given the defense posture of the case, we conclude that any alleged failure by the trial court to instruct the jury with regard to the prosecutor's burden regarding heat of passion did not deny defendant a fair trial.

### VII

Finally, defendant raises several challenges to the validity of his sentence. Defendant first argues that the trial court, in imposing sentence, improperly considered prior misdemeanor convictions that were obtained when the defendant was not represented by counsel. A defendant who collaterally challenges a prior conviction for lack of counsel or a proper waiver of counsel under *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963), bears the initial burden of proof. *People v Carpentier,* 446 Mich 19, 31; 521 NW2d 195 (1994); *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974).

In order to satisfy this burden, a defendant "must present prima facie proof that a prior conviction violated *Gideon,* or present evidence that the sentencing court either 'failed to reply' to a request for or 'refused to furnish' requested copies of records and documents." *Carpentier, supra* at 32, citing *Moore, supra.* The burden shifts to the prosecutor to establish the constitutional validity of the prior conviction once the defendant has satisfied his initial burden of proof. *Carpentier, supra* at 31.

At sentencing, defendant relied on the presentence investigation report (PSIR) to support his argument that ten of his prior misdemeanor convictions were constitutionally infirm. The PSIR indicated that defendant had validly waived counsel in all of the contested convictions. Nevertheless, defendant argues that his convictions were obtained without a proper waiver of counsel and that he presented prima facie proof under *Moore.* Defendant now claims that he is entitled to resentencing because the prosecution did not carry its burden of establishing the constitutional validity of his prior convictions.

Even if we were to agree with defendant's position, a defendant is only entitled to resentencing when a trial court relies on the invalid conviction in imposing sentence. See, e.g., *Moore, supra* at 439-440; *People v Leary (On Remand),* 198 Mich App 282, 286-287; 497 NW2d 922 (1993); *People v Ristich,* 169 Mich App 754, 756; 426 NW2d 801 (1988). From our review of the record, it is clear that the trial court did not enhance defendant's sentence on the basis of the contested convictions:

> Now Mr. Schaeffer is correct the jury has spoken, and I must deal with their verdict. And when I consider the nature of the crime, the prior record, and the guidelines, even if accepting Mr. Schaeffer's analysis that there should not be 10 points given in prior record variable 5, I do believe that the recommendation is appropriate, Mr. Haywood. And, therefore, it is the sentence of the court that you spend a term of not less than 40 years nor more than 60 years with credit for 314 days served. If, as I believe, there were valid waivers, the sentence is within the guidelines. If they were not, I do believe that the protection of society requires the sentence as given.

We also find unpersuasive defendant's argument that his sentence violates the principle of proportionality. Defendant contends that had the trial court not considered the challenged prior convictions, the sentencing guidelines would have recommended a minimum sentence of fifteen to thirty years or life. Therefore, defendant claims that the trial court did not adequately justify the extent of its departure from the upper end of the recommended range.

A sentencing court is free to depart from the guidelines' recommended range when it is disproportionate to the circumstances of the offense and offender. *People v Merriweather,* 447 Mich 799; 527 NW2d 460 (1994); *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990); *People v Brzezinski (After Remand),* 196 Mich App 253, 254-255; 492 NW2d 781 (1992). After reviewing the record in the present case, we conclude that the trial court adequately justified a departure from the guidelines. At sentencing, the trial court indicated that defendant's forty-year minimum sentence was appropriate given the nature of the crime and defendant's prior record. Our review of the record supports the trial court's conclusion. The victim died from a severe beating. Despite the infliction of multiple traumatic injuries, defendant continued for a prolonged period to savagely pummel the victim. The crime committed was extraordinarily brutal and malicious. Moreover, defendant's criminal record includes five prior felony convictions in addition to the contested misdemeanor convictions. After consideration of the offense and the offender, we conclude that the trial court did not abuse its discretion in imposing defendant's sentence.

Affirmed.