*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 14, 2024

Plaintiff-Appellee,

v

No. 364772
Kent Circuit Court
LC No. 20-004274-FC

LEONARD ROY HUDSON III,

Defendant-Appellant.

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (person under 13 years of age); and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (person under 13 years of age). We reverse and remand.

## I. FACTUAL BACKGROUND

Defendant was charged with three counts of CSC-I and one count of CSC-II following an investigation into a report that he had sexually assaulted the victim in Kent County. The victim was 11 years old at the time, and had lived with defendant, her mother's fiancé, since she was six years old. The victim alleged that sometime after she and her mother moved in with defendant, he began touching her inappropriately on her chest, crotch, and buttocks. She also said that defendant would touch her with his private parts. The victim told her mother, who reported the abuse to the Kent County Sherriff's Office. Detectives and a nurse interviewed the victim. The nurse reported the victim had disclosed specific instances of sexual assault perpetrated by defendant. The victim also participated in an interview at the Child Assessment Center (CAC). It was there that the victim recanted her allegations against defendant. However, a few months later, the victim renewed her accusations against defendant in a second CAC interview, claiming that her mother persuaded her to change her story for the first CAC interview.

The trial lasted four days. During voir dire, the prosecutor and defense counsel each asked questions addressing the difficult nature of the case's subject matter. The prosecutor called six witnesses, including the Kent County detective who responded to the mother's call; the victim's

maternal grandmother; an expert in child sexual abuse dynamics; the nurse who interviewed the victim; the detective who interviewed the victim, her mother, defendant; and the victim. Defense counsel called defendant's sister to testify. Defendant did not.

The only direct evidence of the alleged crime was the victim's testimony. The victim testified that defendant sexually abused her for approximately five years. The details of the victim's testimony were graphic. She attested that while all these incidences occurred, her mother would typically be outside, napping, or out of town. The victim stated that defendant would keep her from telling anyone about the abuse by either promising her rewards or threatening that she and her family would have to live on the streets if defendant decided to leave them. Immediately following the close of the victim's testimony, the trial court directly addressed the jury, stating:

> I will remind you, obviously, tough testimony to hear today and normally you would have the inclination to talk about it with someone. I will tell you that following the trial we will provide resources, access to counseling if anyone would like to do it. We can do that through our courthouse Employee Assistance Program, and I will make sure we get that number for anyone who would like to speak to someone professionally. Because these cases are—are challenging for me and everyone else in the courtroom, and I know they are for you as well. So I'll get that information to you. In fact, I'll have it printed out and ready to go tomorrow.

The court admonished the jury not to discuss the case with anyone outside the courtroom. The proceedings were adjourned for the day shortly thereafter.

Defense counsel moved for a mistrial the following day, citing concerns about the court's observation that the victim's testimony might be difficult for the jury to hear, and referring the jury to mental health counseling services. The court explained its decision to comment on the victim's testimony and offer mental health services:

> My main concern was them talking about the testimony of course with people uninvolved in the case, and my thought was providing a professional avenue with confidentiality, you know, and the assurance that even if they didn't need to use the Employee Assistance service immediately today . . . [it] would give a potential outlet for their own individual concerns without turning to other people and saying boy, you know, what do I do with this type of situation.

Rather than grant a mistrial, the court offered to give a curative instruction to the jury. Defense counsel maintained that the trial court's error could not be ameliorated by the proposed curative instruction. Defense counsel argued that defendant's right to an impartial jury and a fair trial had been compromised by the court's apparent endorsement of the victim's testimony. Defense counsel also contended that the timing of the comments mattered. Specifically, because trial was adjourned in the morning and the court's statement was the last thing the jurors heard immediately following the victim's testimony, this allowed "an afternoon and overnight" for the court's seeming partiality to be planted in their minds, which further exacerbated the damage to defendant's constitutional rights.

In response, the prosecutor noted that during voir dire, some jurors admitted that either they or people they knew had been victims of sexual assault. According to the prosecutor, the trial court had simply addressed the difficult nature of the subject matter without "vouching for anybody's credibility," including that of the victim. Therefore, the prosecutor maintained that a curative instruction would suffice to fix the problem. The trial court agreed with the prosecutor and dismissed the motion for a mistrial. Nevertheless, the court indicated that it agreed with defense counsel that it had made a misstep, noting that the "safest" way to refer "jurors to the employee assistance program" would be to do so "following the trial," not during it. The trial court also noted that a future option for providing mental health counseling options to jurors could entail a "cooling down" period before providing the information without judicial commentary. The court then admitted the jurors into the courtroom and delivered the following curative instruction:

> Yesterday I commented [that] hearing the testimony might have been difficult for some of you and mention that resources are available for people who might need them. In telling you this, of course, I did not mean to imply that you should find the testimony you heard to be accurate, honest, or otherwise credible. That is exclusively your responsibility, and if you think I have an opinion on the credibility of any witness presented in the course of this trial or what your verdict should be at the end of the case, you must ignore that perception. My role is solely to make sure that the trial is conducted fairly and in accordance with the rules. But I do not decide the facts. Our Constitution entrusts that solely to you.

> My comments were based on my experience that for some people hearing a description of conduct like what was testified to yesterday can be difficult. Of course there are plenty of reports of people viewing a movie or television show that they know is entirely fictional and still being upset by the content. It is the potential for discomfort that prompted me to make my comments yesterday, and that concern alone.

> Again, I did not intend to make any assessment of the credibility of what you heard yesterday by my comments. That is entirely your responsibility, and as I have told you and will tell you again, you should consider all testimony in the trial before deciding whether the Prosecution has overcome the presumption that the defendant is innocent and proven beyond a reasonable doubt any or all of the crimes with which he has been charged.

The prosecutor then called her remaining witnesses to testify, including the victim's maternal grandmother. Relevant to this appeal, the victim's grandmother attested that the victim's mother did not have much of a social life. Typically, the mother would only go away on trips with defendant's family, including his sister. As far as she knew, the mother only went on one such camping trip. Defendant's sister made a similar statement when defense counsel called her to testify, stating that she only went on one trip with the victim's mother, during which time the victim stayed at the sister's house, not with defendant. The sister did not know of any other occasions where the victim's mother went out of town and left the victim in defendant's care.

Following the close of testimony, defendant was convicted on all counts. He was later sentenced as previously described. This appeal followed.

## II. ANALYSIS

Defendant argues that the trial court abused its discretion and pierced the veil of judicial impartiality by offering mental health services to the jury after the victim's testimony and by subsequently declining to grant a mistrial. We agree.

We review a trial court's decision to grant or deny a motion for mistrial for abuse of discretion. *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). "A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes." *People v Boshell*, 337 Mich App 322, 331; 975 NW2d 72 (2021). A court commits an error requiring reversal when the error is so gross "as to have deprived defendant of a fair trial, that his conviction was, in truth, a miscarriage of justice." *People v Ritholz*, 359 Mich 539, 559; 103 NW2d 481 (1960). "[W]hether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

Determining whether the veil of impartiality has been pierced is a fact-specific inquiry, and "[a] defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *People v Jackson*, 292 Mich App 583 598; 808 NW2d 541 (2011) (quotation marks and citation omitted). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Stevens*, 498 Mich at 171. *Id.* "Ultimately, the reviewing court should not evaluate errors standing alone, but rather consider the cumulative effect of the errors." *Id.* at 171-172. Our Supreme Court has explained:

> In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, [1] the nature of the trial judge's conduct, [2] the tone and demeanor of the judge, [3] the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, [4] the extent to which the judge's conduct was directed at one side more than the other, and [5] the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. When the issue is preserved and a reviewing court determines that the trial judge's conduct pierced the veil of judicial impartiality the court may not apply harmless-error review. Rather, the judgment must be reversed and the case remanded for a new trial. [*Id.* at 164.]

Defendant "need not establish that each factor weighs in favor of the conclusion that the judge demonstrated the appearance of partiality for the reviewing court to hold that there is a reasonable likelihood that the judge's conduct improperly influenced the jury." *Id.* at 172. Furthermore, while "[a] single inappropriate act does not necessarily give the appearance of advocacy or partiality," in some instances, "a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id.* at 171.

Given the totality of the circumstances, it is our opinion that the trial court's conduct at issue constituted "biased commentary," or was otherwise inappropriate, however well-meaning the court's intentions. *Id*. Of principal concern are the nature of the court's comments and the judge's demeanor. In *Stevens*, our Supreme Court cautioned that "[i]t is essential that the judge not permit his own views on disputed issues of fact to become apparent to the jury." *Id*. at 174 (quotation marks and citations omitted). The Court also advised reviewing courts to "consider the tone and demeanor the trial judge displayed in front of the jury." *Id*. Here, the record indicates that the court advised the jury that "these cases are—are challenging for me and everyone else in the courtroom, and I know they are for you as well." This came directly on the heels of the victim's testimony. There is no evidence in the record that anyone in the jury appeared distressed by the victim's testimony at the time, although the trial judge was clearly distressed by the contents of said testimony. Thus, it would appear that the comments largely reflected the trial court's opinion of, and feelings about, the victim's testimony—namely that it was "challenging" for the court to hear it.

Defendant has consistently maintained that the nature of the court's comments evidenced its belief in the credibility of the witness's testimony. We are inclined to agree. If the trial court did not find the witness's testimony more credible than not, it is unclear why was it so strongly affected that it felt the immediate need to advise the jurors about mental health services. We acknowledge that it is possible that the court simply felt it appropriate to offer information about mental health counseling because it was disturbed by the testimony and assumed the jury would be, too. But even if that were so, it was a poor time for the court to seek to commiserate with the jury. We conclude that its decision to reference the need for mental health services could have tainted the jury's view of the evidence, no matter how well-intentioned the act might have been.

Quoting *Wheeler v Wallace*, 53 Mich 355, 357-358; 19 NW2d 33 (1984), defendant aptly notes on appeal that it is "possible for a judge, however correct [their] motives, to be unconsciously so disturbed by circumstances that should not affect [them], as to do and say, in the excitement of trial, something, the effect of which [they] would not at the time realize, and thereby accomplish a mischief which was not designed." Such may have been the case in this instance. To that end, it is telling that the trial court itself appeared to recognize that it had made a mistake, and conceded that it would have been safer to refer jurors to mental health services after the trial, not during it. Regardless of its underlying intentions, we are concerned that the court's commentary impermissibly signaled that it believed the victim's testimony, thus violating the court's obligation to remain impartial. *Id*.

Additionally, the timing of the court's curative instruction matters. Had the court immediately walked its statement back and gave a curative instruction explaining the purpose of its comments, the impact on the jury could certainly have been lessened. Instead, court was adjourned for the day and a curative instruction was not given until court reconvened the following day, thus giving the jury a full 24-hour period to contemplate the nature of the court's statements in relation to the victim's testimony. For a limiting instruction to truly cure an error such as this, it must be clearly and immediately delivered to the jury. Anything less, and this Court may find itself in the unfortunate position of concluding that *any* curative instruction—regardless of its timing or content—is sufficient to save the lower courts the trouble of retrying a defendant.

Given the totality of the circumstances, the trial court pierced the veil of judicial impartiality by indicating that it was disturbed by the victim's testimony, thus creating the appearance of sympathy for, or partiality toward, the victim. Combined with the length of time between the comments and the court's eventual delivery of a curative instruction to the jury, defendant was prejudiced by the court's actions. We therefore conclude that the only course of action sufficient to cure the prejudice to defendant would have been granting his motion for a mistrial. See *Haywood*, 209 Mich App at 228 ("A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, and impairs his ability to get a fair trial."). Defendant is entitled to a new trial.[1]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood

---

[1] Because we conclude that defendant is entitled to a new trial, we need not address his challenge to the sufficiency of the evidence at this time.