# Court of Appeals, State of Michigan

## ORDER

Michael J. Talbot, Chief Judge, acting under MCR 7.211(E)(2), orders:

The opinions in the following appeals are hereby AMENDED to correct a clerical error in the date of issuance. The date on the opinions is corrected to read April 10, 2018.

**334631 People of MI v Maurice Larnell Glover**

**335396 People of MI v Robert Daren Hale**

**336245 People of MI v Toriono Kent**

**336893 Goldcorp Inc v Varoujan M Basmajian**

**337595 Jeffery Beck v Alpine Shredders Limited**

**337951 Teddy 23 LLC v Department of Treasury**

In all other respects, the opinions remain unchanged.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

APR 1 0 2018
_____
Date

_____
Chief Clerk

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TORIONO KENT, also known as
TORIONO RAHMAN KENT,

      Defendant-Appellant.

UNPUBLISHED
April 9, 2018

No. 336245
Wayne Circuit Court
LC No. 15-006532-01-FC

Before: SERVITTO, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of assault with intent to do great bodily harm less than murder, MCL 750.84, assault with intent to commit murder, MCL 750.83, first-degree home invasion, MCL 750.110a(2), intentional discharge of a firearm in a building, MCL 750.234b, carrying a dangerous weapon with unlawful intent, MCL 750.226, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 66 to 120 months' imprisonment for the assault with intent to do great bodily harm less than murder conviction, 225 to 360 months' imprisonment for the assault with intent to commit murder conviction, 111 to 240 months' imprisonment for the first-degree home invasion conviction, 57 to 120 months' imprisonment for the intentional discharge of a firearm in a building conviction, two to five years' imprisonment for the carrying a dangerous weapon with unlawful intent conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

This case arises from two shootings of a single victim in Detroit. Late in the evening of June 30, 2015, defendant and his next-door neighbor, Ray Williams, were drinking together in their apartments in Detroit. Defendant's girlfriend, Christine Davis, was also present at that time. Eventually, defendant and Williams got into a "fistfight" over Williams's excessive noise, and according to Williams, he lost the fistfight and left defendant's apartment. Subsequently, Williams left their apartment building and headed towards another apartment building. As Williams approached the other apartment building, a red or maroon Ford automobile driven by Davis pulled up near Williams, and defendant exited the automobile with a black gun.

Defendant pointed his gun at Williams and began shooting. Williams estimated that defendant fired five to six shots before defendant stopped shooting, and then defendant fired

-1-

"some more." Williams was "hit" on his lower right side. During trial, Williams lifted his shirt, and the prosecutor noted for the record that Williams displayed "two black marks in a linear, somewhat downward sloping direction on his right flank."

After defendant finished shooting, he entered the automobile and left the area. Williams went back home to his apartment afterwards. He did not call 911, and he eventually passed out in his apartment while he was still bleeding. Williams woke up the next day, and he went to Henry Ford Hospital for medical attention. During trial, Williams explained that he did not reveal the identity of his shooter at that time because he "was just seeking medical attention at [that] moment."

At approximately 10:00 p.m. on July 7, 2015, Williams saw Davis sitting on a balcony outside of his apartment building. For a moment, they locked eyes. Davis was on her "phone," and she seemed "kind of jumpy" after she saw Williams. Later that evening, Williams saw a gray or brown compact SUV in front of the apartment building. At that time, Williams was sitting in the dark in the front of his living room by the window. There was only one light on in the apartment, and that light was in the apartment's sole bedroom. Williams's door was then kicked in. Defendant was standing in Williams's doorway accompanied by two other men.

Defendant was armed with a black .40 caliber gun; the second man was armed with an AK-47, and the third man held a "chrome .380." The three men began shooting in the direction of the bedroom. However, the men eventually stopped shooting in the direction of the bedroom, and they then began shooting at Williams. Williams testified that the men were approximately 3 feet away from him, and that he was hit with "graze wounds;" however, Williams was unsure if his wounds were caused by "the drywall that was floating around . . . ." The men did not say anything to Williams after they finished shooting, instead, they left the apartment, and then departed from the apartment building in the "gray SUV" Williams saw earlier.

Shortly after the police arrived, Williams clarified that he did not call 911. He told the police about the shooting, and he confirmed that he told the police that defendant "did the shooting." He also informed the police that defendant lived next door. At some point later, Williams identified defendant using a photographic lineup. Detroit Police Officer Harold Lewis testified that Williams also identified Davis using a photographic lineup; however, Officer Lewis clarified that Williams was not "100 percent sure" about the identification. Approximately one week later, defendant was arrested after he was seen leaving Davis's home in Westland.

Defendant contends that the trial court erred when it denied his motion to suppress evidence obtained from Davis's home because the search warrant relied upon by police was premised upon an affidavit that failed to supply probable cause. We disagree.

We review de novo the trial court's ultimate ruling on a motion to suppress evidence, while reviewing its factual findings for clear error. *People v Barbarich*, 291 Mich App 468, 471; 807 NW2d 56 (2011). We will determine a finding clearly erroneous when left with a definite and firm conviction that the trial court made a mistake. *Id*.

"The Fourth Amendment of the United States Constitution and article 1, § 11 of the Michigan Constitution protect against *unreasonable* searches and seizures." *Id*. at 472.

"Generally, searches or seizures conducted without a warrant are presumptively unreasonable and, therefore, unconstitutional." *Id*. Evidence obtained unconstitutionally is inadmissible as substantive evidence in a criminal proceeding. *In re Forfeiture of $176,598*, 443 Mich 261, 265; 505 NW2d 201 (1993). "Thus, in order to show that a search was legal, the police must show either that they had a warrant, or that their conduct fell under one of the narrow, specific exceptions to the warrant requirement." *People v Davis*, 442 Mich 1, 10; 497 NW2d 910 (1993).

Constitutional rights, including the freedom from unreasonable searches and seizures, are personal and may not be invoked by third parties. *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). "For an individual to assert standing to challenge a search, the individual must have had a legitimate expectation of privacy in the place or location searched, which expectation society recognizes as reasonable." *Id*. An overnight guest at a residence may have a protected legitimate expectation of privacy. *People v Parker*, 230 Mich App 337, 340; 584 NW2d 336 (1998), citing *Minnesota v Olson*, 495 US 91, 93-94; 110 S Ct 1684; 109 L Ed 2d 85 (1990). "The defendant has the burden of establishing standing, and in deciding the issue, the court should consider the totality of the circumstances." *Brown*, 279 Mich App at 130 (citations omitted). The *Brown* Court noted various factors relevant to standing include,

> " 'ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.' " [*Id*., quoting *People v Powell*, 235 Mich App 557, 563; 599 NW2d 499 (1999).]

"Probable cause to search must exist at the time a warrant is issued." *People v Stumpf*, 196 Mich App 218, 227; 492 NW2d 795 (1992). Thus, a magistrate may only issue a search warrant on finding probable cause, i.e., "when he or she finds that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *People v Franklin*, 500 Mich 92, 101; 894 NW2d 561 (2017)(citation omitted). "A magistrate's finding of probable cause and his or her decision to issue a search warrant should be given great deference and only disturbed in limited circumstances." *Id*. Circumstantial evidence, and reasonable inferences arising from it, may be sufficient to establish probable cause. *People v Northey*, 231 Mich App 568, 575; 591 NW2d 227 (1998).

Defendant filed a motion to suppress the evidence obtained from Davis's home on the basis that the search warrant relied upon by the police was invalid. At the hearing on defendant's motion, defense counsel argued that there was no nexus between defendant, Davis's home, and the alleged criminal activity; therefore, the affidavit in support of the search warrant was defective and failed to establish probable cause. Defense counsel also took issue with the affidavit's reliance on "hearsay" from Detroit Police Officer Robert Skender that there was a "ping" on "the suspect's phone" near Davis's home because the affidavit did not specify when that "ping" was detected. The prosecutor responded that the affidavit alleged that defendant shot at Williams; Davis was defendant's girlfriend; defendant exited Davis's Ford Fusion before he shot at Williams, and the "ping" was detected after a search warrant had been "signed for a cell phone." Moreover, the prosecutor noted that defendant was essentially conceding that Davis's

home was also his home in order to establish standing to challenge the search warrant, and that if he was not, then defendant had no standing to challenge the search warrant.

The trial court observed that standing was an issue, and defense counsel replied he would have to research the question of standing. The trial court then considered the parties' arguments, noting that "the search warrant [was] a little bit sloppy" because it was missing "the dates of some things[.]" But the court also observed that "it has the dates of others and I think a reasonable person reading it could plug this in . . . it's done in a chronological order." Ultimately, the trial court continued the hearing on the motion to another date to permit defense counsel the opportunity to further research the issue of standing.

Defendant thereafter filed a supplemental brief in support his motion to suppress. In it, he contended he was an overnight guest at Davis's home; therefore, he had standing to contest the search of Davis's home. On the same day, the trial court continued the motion hearing. Defense counsel asserted that defendant had standing to contest the search warrant because "he may have stayed overnight" at Davis's home.

The trial court denied defendant's motion to suppress on the basis of defects in the search warrant. The court explained, "A magistrate reading [the affidavit] would view it in . . . chronological order," and that the affidavit provided that "the person who lives at this address was operating the motor vehicle from which the defendant exited and began firing at the first site." So the trial court ruled that "there's sufficient basis there for the issuance of a warrant[.]" It making its ruling, however, the trial court did not address the issue of standing.

At the outset, defendant failed to carry his burden to present any evidence that he had standing to challenge the search warrant for Davis's home. While an overnight guest may be entitled to a legitimate expectation of privacy, defendant presented no evidence in support his assertion that he was an overnight guest in Davis's home. In fact, during the motion hearing, defense counsel merely asserted that defendant had standing to contest the search warrant because "he may have stayed overnight" at Davis's home. At most, defense counsel conceded that Davis was defendant's "girlfriend," but defense counsel never provided any evidence that defendant had actually been an overnight guest in Davis's home.

Therefore, the trial court should have denied the motion to suppress the evidence obtained via the search warrant on the basis that defendant lacked standing. Regardless, the trial court denied defendant's motion as it found defendant's contentions regarding deficiencies in the supporting affidavit to be meritless. "This Court will affirm a lower court's ruling when the court reaches the right result, albeit for the wrong reason." *People v Lyon*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998).

Nonetheless, defendant still contends on appeal that the trial court erred when it denied his motion to suppress, because he asserts that the affidavit in support of the search warrant was deficient in establishing a nexus between defendant, his shooting of Williams, and Davis's home. While defendant failed to establish standing to challenge the search warrant in the first instance, defendant's challenge is nonetheless meritless.

The affidavit alleged that defendant shot at Williams after defendant exited a Ford Fusion driven by defendant's "girl, 'Christina,' " and subsequently, defendant left the area in that automobile. Additionally, the affidavit provided that Williams stated that " 'Christina' " lived in Westland, and a search of "Accurint law enforcement database" revealed that "Christine Davis" was a "known associate" of defendant who lived in Westland and that a license plate for a 2008 Ford Focus was registered in her name. Moreover, the affidavit alleged that a search warrant had been executed for defendant's cellular phone number, and that on July 14, 2015, Officer Skender reported that a "ping on" defendant's cellular phone placed defendant near Davis's address, and surveillance revealed that Davis's Ford Fusion was "observed" at Davis's home.

Defendant contends that there was no evidence that he would have left any evidence related to the shootings at Davis's home. However, according to the affidavit, Davis provided defendant with transportation before and after he shot at Williams. As such, there was a fair probability that defendant or evidence related to shootings of Williams would be present in her home. Therefore, even when assuming arguendo that defendant had standing to challenge the search warrant for Davis's home, defendant has failed to demonstrate why the magistrate's finding of probable cause should be disturbed.

Defendant tautologically suggests that because the supporting affidavit was clearly defective, no reasonable officer should have relied on the warrant issued by the magistrate in good faith. Yet, defendant has failed to demonstrate the existence of any underlying defect in the affidavit or the search warrant; therefore, his contention is unavailing.

Next, defendant contends that the trial court erred when it denied his motion for a mistrial, and in his Standard 4 Brief, defendant asserts that he was denied a fair trial due to prosecutorial misconduct. We disagree.

To preserve a claim of prosecutorial misconduct for appellate review, "a defendant must have timely and specifically objected below, unless an objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defendant did not preserve this issue by raising an objection in the trial court based on prosecutorial misconduct.

To avoid forfeiture under the plain error rule, the defendant must demonstrate that an error occurred, the error was plain, and the plain error affected substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015).

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citations omitted). On appeal, a trial court's decision to grant or deny a mistrial will not be reversed in the absence of an abuse of discretion. *Id*. An abuse of discretion occurs when trial court's decision falls outside the range of reasonable and principled outcomes. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011).

"A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008)

(citation omitted). Further, an unresponsive or volunteered answer to a proper question is generally not grounds for the granting of a mistrial. *Haywood*, 209 Mich App at 228.

The test to determine if alleged prosecutorial misconduct merits reversal is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). This Court considers claims of prosecutorial misconduct on a case-by-case basis, and the prosecutor's remarks must be considered in context. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial" and may "argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008), citing *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70 (citation omitted).

On January 20, 2016, at the close of a continued motion hearing, defense counsel stated that he intended to a file a motion relating to defendant's "Wayne County I.D. band" which was found during the search of Davis's home. Defense counsel was concerned that the "Wayne County I.D." would "taint" defendant in "front of the jury" because it suggested that defendant was "a repeat offender." In response, the prosecutor suggested that a euphemism be used during trial to reference the item, and the trial judge observed, "I don't think we need to say it's a Wayne County Inmate or a State of Michigan - you know, anything that indicates prior convictions or prior contact." Thus, the prosecutor suggested referring to the item as a "government issued I.D." Defense counsel agreed that term "sounded fair " and that he did not want "Wayne County Jail Inmate information brought forward."

During trial, Detroit Police Sergeant Andrew Dattrolo testified that he assisted during the search of Davis's home. He testified that he found a "government I.D." "bracelet" belonging to defendant inside a dresser in the same bedroom as the AK-47. During cross-examination, Sergeant Dattrolo confirmed that the "bracelet" did not have an address on it. During redirect, the prosecutor asked Sergeant Dattrolo if it would have been likely for that kind of "government I.D." to have been left at the house by someone else. In response, defense counsel objected to the form of the question. After a brief bench conference, the prosecutor asked Sergeant Dattrolo if there was a photograph on the "government I.D." Sergeant Dattrolo confirmed that there was a photograph on that item, that he had been provided with a photograph of defendant before the search, and that the two matched.

The prosecutor then asked Dattrolo, "without knowing what the identification is, the nature of this identification – is that something in your experience that would have been left at a location that didn't have an association with the person?" Defense counsel objected to the form of the question, and the trial court overruled the objection. Sergeant Dattrolo began to respond, "Well, it's fact that when people are released from jail or prison . . . ." Defense counsel interjected, "Judge, I have a motion." The trial court then suggested an alternative phrasing of the question to the prosecutor when it stated, " 'Without going into what the document is -' ."

The prosecutor then rephrased the question, "Without going into what the thing is, in your experience as a law enforcement officer, this sort of identification - would it likely be at a location not associated with the owner of that identification? Yes or no?" Sergeant Dattrolo

responded, "Absolutely not. These things are typically carried with them as their identification until they can actually get legal identification."

Subsequently, defense counsel moved for a mistrial. Defense counsel contended that the prosecutor's questions had "brought out that in fact [the government issued identification] was a jail bracelet;" consequently, there was a "direct violation" of the trial court's "order" regarding that item. The prosecutor responded that he did not "go into the nature of the I.D.," and that defense counsel had "opened the door to going into exactly what sort of I.D. this was" by thoroughly questioning Sergeant Dattrolo concerning whether the "I.D." was a proof of residence. Moreover, the prosecutor emphasized the fact that Sergeant Dattrolo did not "say it was a jail I.D. bracelet," but rather, Sergeant Dattrolo made a "small throwaway comment in the context of a much larger piece of testimony and a much larger body of testimony."

The trial court denied the motion, and it noted that "everybody jumped up including [the prosecutor]" when Sergeant Dattrolo mentioned "jail or prison." Moreover, the trial court offered to give the jury a limiting instruction if defense counsel wanted one.

Defendant contends that he was denied a fair trial when Sergeant Dattrolo referred to defendant's "jail bracelet" during trial which "let the jury know that [defendant] had been arrested and or convicted on unrelated charges." Defendant's contention is without merit.

While defendant asserts that Sergeant Dattrolo referred to defendant's "jail bracelet" during trial, in fact, Sergeant Dattrolo said, "Well, it's fact that when people are released from jail or prison," but he was interrupted before he could complete his sentence. Moreover, the question the prosecutor asked Sergeant Dattrolo was structured to prevent Dattrolo from disclosing the nature of defendant's "bracelet." Nor was defendant or his "bracelet" directly linked to "jail or prison" as Sergeant Dattrolo was prevented from finishing his statement.

At most, defendant asserts that the trial court should granted his motion for a mistrial based on the unresponsive and volunteered answer to the prosecutor's question. But "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *Haywood*, 209 Mich App at 228.

Nonetheless, defendant asserts that the prejudicial impact of Sergeant Dattrolo's reference to "jail or prison" was heightened due to the relative weakness of the evidence presented against defendant. Specifically, defendant argues that the prosecution's case largely rested on Williams's testimony, whose testimony was incredible. Of course, defendant disregards the evidence presented at trial which corroborated Williams's testimony, including: (1) the .40 caliber Hornady shell casings collected from the sites of both shootings, (2) the testimony that all of those shell casings were determined to have been fired from the same firearm, (3) that two .40 caliber pistol magazines, an AK-47, and an AK-47 drum magazine were found inside of Davis's home alongside defendant's "government I.D." "bracelet" and a prescription bottle with defendant's name on it, and (4) the two boxes of .40 caliber Hornady ammunition that were found in Davis's Ford Fusion. Therefore, defendant's assertion is unavailing in light of the abundant evidence presented against defendant during trial.

Relatedly, defendant raises a claim of prosecutorial misconduct in his Standard 4 Brief based on Sergeant Dattrolo's reference to "jail or prison" during his testimony. Specifically, defendant essentially contends that the prosecutor purposefully intended for Sergeant Dattrolo to introduce inadmissible testimony. But defendant fails to support his contention with any relevant reference to the lower court record. In fact, defendant wholly disregards the fact that the trial judge specifically noted that "everybody jumped up" after Sergeant Dattrolo "began to say '. . . prison, jail,' " to "stop him from going any further on it. . . ."

Thus, defendant has failed to demonstrate that the prosecutor was attempting to introduce inadmissible testimony via Sergeant Dattrolo. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70 (citation omitted). Therefore, defendant's contention fails.

Defendant also raises a second claim of prosecutorial misconduct in his Standard 4 Brief, on the basis that the prosecutor permitted Williams to commit perjury when Williams testified "that he was hit and had bullet wounds, when in fact he had been grazed." Defendant's argument lacks merit.

A defendant's right to due process is violated when the prosecution allows false testimony from one of its witnesses to go uncorrected. *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015). However, it is defendant's burden to demonstrate that the evidence or testimony was in fact false. See *People v Bass*, 317 Mich App 241, 272; 893 NW2d 140 (2016). "Although an inconsistent prior statement may be a mechanism to impeach a witnesses' credibility at trial, it is not definitive evidence that the trial testimony is false." *Id*. at 275.

During trial, Williams testified that during the July 1, 2015 incident, defendant exited an automobile and shot at him more than five times. He explained that he was "hit" on his lower right side. Later, during trial, Williams lifted his shirt, and the prosecutor noted for the record that Williams displayed "two black marks in a linear, somewhat downward sloping direction on his right flank." After defendant finished shooting, he entered the automobile and left the area. Williams went back home to his apartment. He did not call 911, and he eventually passed out in his apartment while he was still bleeding. After Williams woke up the next day, he went to Henry Ford Hospital for medical attention. He told his doctors that he had been shot, but he did not tell them who shot him. At trial, Williams explained that he did not reveal the identity of the shooter at that time because he "was just seeking medical attention at [that] moment."

Defendant contends that Williams committed perjury when he offered this testimony because defendant was merely "grazed" by a bullet as opposed to being "hit." Thus, defendant's contention that Williams's testimony was false is entirely pedantic, as it hinges on the minor definitional difference between being "grazed" and "hit" by a bullet. Defendant offers no detailed explanation as to the difference between those two terms, nor, more importantly, how such a variance demonstrates that Williams's testimony was actually false. Hence, defendant has entirely failed to demonstrate any error in the prosecutor's presentation of Williams's testimony.

Defendant argues in his Standard 4 brief that the trial court erred when it granted the prosecution's "motion to consolidate." We disagree.

Generally, an issue is preserved for appellate review when it is raised before and addressed and decided by a trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant did not argue in the trial court that his "case" was improperly consolidated. In fact, defendant's case and charges were never subject to an order of consolidation. Defendant did, however, file a pretrial motion to sever, arguing that two counts of assault with intent to commit murder were based on activity unrelated in time and place to the remaining charges. The trial court denied defendant's motion. Therefore, to the extent that defendant contends that the trial court should have granted his motion to sever, those contentions are preserved for appellate review.

"The court's ultimate ruling on a motion to sever is reviewed for an abuse of discretion." *People v Girard*, 269 Mich App 15, 17; 709 NW2d 229 (2005). "Whether defendant's charges are related is a question of law that we review de novo." *Id*.

"On the defendant's motion, the court must sever for separate trials offenses that are not related as defined in subrule (B)(1)." MCR 6.120(C). Offenses are related under MCR 6.120(B)(1), "if they are based on (a) the same conduct or transaction, or (b) a series of connected acts, or (c) a series of acts constituting parts of a single scheme or plan." Thus, the Court Rules "permit[] joinder of offenses that were not committed at the same time but nevertheless constitute a series of connected acts or acts constituting part of a single scheme or plan." *People v Williams*, 483 Mich 226, 241; 769 NW2d 605 (2009) (quotation marks omitted). Further, the acts need not be " 'of the same or similar character[.]' " *Id*. at 242. "The admissibility of evidence in other trials is an important consideration because joinder of other crimes cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial." *Id*. at 237 (citation, alterations and quotation marks omitted).

Defendant contends, in his Standard 4 Brief, that the trial court erred when it "granted" the prosecution's "motion to consolidate [defendant's] charges." But the prosecution properly charged multiple offenses in single felony information, MCR 6.102(A), and the prosecution never moved to consolidate any other cases. Thus, to the extent that defendant contends that the trial court erred when it granted the prosecution's "motion to consolidate," we conclude defendant's contention must fail because the trial court never actually granted such a motion.

Regardless, upon review of the lower court record, we note the trial court did deny defendant's pretrial motion to sever the charges against him. Thus, despite some confusion on defendant's part, it appears that defendant is essentially challenging the trial court's denial of his motion to sever. In his motion to sever, defendant argued that the two counts of assault with intent to commit murder were based on activity unrelated in time and place to the remaining charges. On appeal, defendant raises similar contentions, albeit with less particularity.

Nonetheless, defendant disregards that the two counts of assault with intent to murder consisted of a series of connected acts, chiefly, defendant's assaults on Williams. Specifically, during both incidents defendant used a firearm to assault Williams, and therefore, at a minimum, the offenses were a series of connected acts based on defendant's intended victim. Moreover, defendant does not contend that MRE 404(b)(1) would render the evidence of the respective assaults inadmissible even if separate trials were held. Nor does defendant consider whether the evidence of each assault against defendant would have been admissible at each respective trial

even if defendant's motion had been granted. So to the extent that defendant challenges the trial court's denial of his motion to sever, defendant's argument is without merit.

Finally, defendant contends that there is a jurisdictional defect in the manner in which he was bound over for trial. We disagree.

"A district court's bindover decision that is contingent on the factual sufficiency of the evidence is reviewed for an abuse of discretion. A circuit court's review of the bindover decision involves examination of the entire preliminary examination record, and it may not substitute its judgment for that of the lower court." *People v Norwood*, 303 Mich App 466, 468; 843 NW2d 775 (2013) (citations omitted). However, appellate review of a circuit court's decision to grant a motion to quash a felony information is reviewed de novo to determine if the district court abused its discretion in ordering the bindover. *Id.*

"The purpose of a preliminary examination is to determine whether there is probable cause to believe that a crime was committed and whether there is probable cause to believe that the defendant committed it." *People v Perkins*, 468 Mich 448, 452; 662 NW2d 727 (2003). "The prosecutor need not establish beyond a reasonable doubt that a crime was committed. He need present only enough evidence on each element of the charged offense to lead 'a person of ordinary prudence and caution to conscientiously entertain reasonable belief of [the defendant's] guilt.' " *Perkins*, 468 Mich at 452 (citations omitted) (alteration in original).

Defendant does not specifically challenge the findings of the district court related to his bindover. Instead, defendant asserts in his Standard 4 Brief that he was bound over "without stating on the record by the trial court." Nor does defendant raise any particularized arguments that there was insufficient evidence to support a finding of probable cause for his charged offenses. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Therefore, defendant has abandoned any challenge related to the evidence presented during his preliminary examination.

Instead, defendant relies on the trial court's observation, made during the hearing on defendant's motion to quash his bindover, that "it's always easier when the district judge gives the reasons for why they do a bind over. It makes it easier to review it because you have to go through and try and figure out exactly what was going through their mind." Nonetheless, the trial court ultimately denied the motion to quash because it found that there was sufficient evidence presented during defendant's preliminary examination to support the bindover. Moreover, at the close of defendant's preliminary examination, the magistrate clearly stated, "Based on the testimony the Court believes that the Prosecution has established probable cause of the offenses as charges [sic] occurring, and that you as the Defendant did commit them."

Thus, to the extent that defendant essentially contends that the district court erred by failing to explicitly bind defendant over, that contention is entirely unsupported by the record. Moreover, the trial court's observation regarding the district court's lack of a detailed explanation for defendant's bindover was merely the trial court's commentary on how its own review of the district court's findings would have been made less difficult if an explicit rationale

for the bindover had been provided on the record, and nothing more. Finally, "[a] defendant may not appeal whether the evidence at the preliminary examination was sufficient to warrant a bindover if the defendant was fairly convicted of the crimes at trial." *People v Green*, 313 Mich App 526, 530; 884 NW2d 838 (2015) (quotation marks and citation omitted). Therefore, defendant's contention is entirely without merit.

We affirm.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Peter D. O'Connell