*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIMOTHY JAMES-LEROY HEMMINGER,

        Defendant-Appellant.

UNPUBLISHED
December 17, 2020

No. 348936
Montcalm Circuit Court
LC No. 2018-024575-FH

Before: FORT HOOD, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Defendant, Timothy James-Leroy Hemminger, appeals as of right his jury trial conviction of two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (penetration of a victim at least 13 years of age but under 16 years of age). The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to 120 to 270 months' imprisonment. We affirm.

## I. FACTS

In this case, the victim, PH, who was 14 years old, met defendant, who was 23 years old, at a party. The victim and defendant engaged in sexual intercourse and oral sex. Afterward, defendant remained in contact with the victim. He messaged and called her through her Facebook account in hopes of having a relationship with her. Approximately a month later, defendant and the victim met again in person at the same house, and they once again engaged in sexual intercourse and oral sex. The victim's sister eventually found out about the relationship the victim and defendant had, and she told the victim's parents. The victim's mother then called the police. The victim underwent a forensic interview. Additionally, the police interviewed defendant twice. During both interviews, one of which was recorded, defendant admitted to engaging in intercourse and oral sex with the victim. Defendant was then charged, convicted, and sentenced. He now appeals.

-1-

## II.  EVIDENCE OF UNCHARGED CONDUCT

## A.  ADMISSION

Defendant first argues that the trial court improperly permitted the prosecution to admit evidence regarding a third incident between him and the victim at trial.  We disagree.

This Court reviews for plain error unpreserved claims "affecting a defendant's substantial rights."  *People v Jackson*, 292 Mich App 583, 592; 808 NW2d 541 (2011).  Defendants must meet the following three requirements to establish plain error: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights."  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  Additionally, even if the "defendant satisfies the three requirements, an appellate court must exercise its discretion in deciding whether to reverse" because "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ."  *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original).

The general rule is that "evidence of other crimes, wrongs, or acts of an individual is inadmissible to prove a propensity to commit such acts."  *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998).  However, other-acts evidence can be admissible under MRE 404(b).  To be admissible at trial, the prosecution must establish the following:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.  [*People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).]

MRE 403 governs the third prong of the test established in *VanderVliet*, 444 Mich at 74-75.  MRE 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  MRE 403 "does not prohibit prejudicial evidence; only evidence that is unfairly so.  Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury."  *Crawford*, 458 Mich at 398.  The concern is that the jury will use the other-acts evidence "precisely for the purpose that it may not be considered, that is, as suggesting that the defendant is a bad person, a convicted criminal, and that if he did it before he probably did it again."  *Id*. (quotation marks and citation omitted).

However, "[w]hen a defendant is charged with a sexual offense against a minor, MCL 768.27a allows prosecutors to introduce evidence of a defendant's uncharged sexual offenses against minors without having to justify their admissibility under MRE 404(b)."  *People v Pattison*, 276 Mich App 613, 618-619; 741 NW2d 558 (2007).  "In many cases, it allows evidence that previously would have been inadmissible, because it allows what may have been categorized as propensity evidence to be admitted in this limited context."  *Id*. at 619.  The Legislature intended

that MCL 768.27a, "a valid enactment of substantive law, to supersede the court rule." *People v Duenaz*, 306 Mich App 85, 99; 854 NW2d 531 (2014). Despite superseding MRE 404(b), MCL 768.27a remains subject to MRE 403. *People v Watkins*, 491 Mich 450, 486; 818 NW2d 296 (2012).

In this case, before trial, the prosecution did not provide any formal, written notice to defendant that it would be presenting other-acts evidence. Additionally, before trial, it was established that defendant had three CSC-III charges pending against him. Count I was for penis and vaginal penetration, Count II was for mouth and penis penetration, and Count III was for mouth and vaginal penetration. In the prosecution's opening argument, it accused defendant of penetrating the victim in three different manners, on two different nights. The prosecution also argued that defendant had sex with the victim on at least two different occasions.

During trial, the victim testified that she had two separate sexual encounters with defendant. One encounter occurred in October 2017, and the other encounter occurred in November 2017. The victim testified that during both encounters, defendant penetrated her vagina with his mouth and penis. Additionally, the victim put defendant's penis in her mouth. On direct-examination, the victim also testified that she informed the forensic interviewer that her best friend, SF, once told her that while she was sleeping, SF saw defendant on top of the victim. During cross-examination, defense counsel also questioned the victim about the forensic interview. The victim admitted that she told the forensic interviewer that she did not know whether or how many times she had sex with defendant while she was sleeping. Additionally, she admitted that she told the forensic interviewer that she had sex with defendant five times even though at trial she testified it only happened two times. SF also testified at trial. She denied ever witnessing any contact between defendant and the victim.

During the prosecution's closing argument, the prosecution reiterated that defendant penetrated the victim in three different manners, on two different nights. The jury later convicted defendant on two of his CSC-III charges, the charge for penetrating the victim's vagina with his penis and the charge for penetrating the victim's vagina with his tongue.

Although defendant analyzes this issue pursuant to MRE 404(b), the analysis in this case is properly governed by MCL 768.27a(1), which supersedes MRE 404(b). In this case, defendant was charged with three counts of CSC-III. See MCL 750.520d(1)(a). He was accused of penetrating the victim, a minor, on two different nights, in three different ways. There was also evidence that defendant penetrated the victim while she slept. However, it does not appear that defendant was charged for this act, even though he could have been charged with another count of CSC-III. See MCL 750.520d(1)(a). Both defendant's charges and his uncharged act are listed offenses against a minor. See MCL 28.722(j), (w)(*iv*). Therefore, evidence that defendant penetrated the victim while she slept was admissible pursuant to MCL 768.27a(1) without the prosecution having to justify its admissibility as it would have had to under MRE 404(b). See *Pattison*, 276 Mich App at 618-619.

However, evidence admitted pursuant to MCL 768.27a(1) may still be excluded pursuant to MRE 403. See *Watkins*, 491 Mich at 486. The Michigan Supreme Court in *Watkins*, 491 Mich at 489-490, "provided specific guidance to trial courts in applying MCL 768.27a and the balancing test of MRE 403." *Duenaz*, 306 Mich App at 99. "First, the propensity inference of the evidence

must be weighed in favor of the evidence's probative value." *Id*. See *Watkins*, 491 Mich at 489. Additionally, the following factors may be analyzed to determine whether the other-acts evidence should be excluded:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

In this case, the probative value of the evidence was not substantially outweighed by the danger of its unfair prejudice. See MRE 403. First, both the uncharged conduct and the charged conduct were "of the same general category" because both the charged and uncharged conduct involved sexual acts against the same minor. *Duenaz*, 306 Mich App at 101 (quotation marks and citation omitted). For example, defendant was charged with one count of penetrating the victim's vagina with his penis, and the other-acts evidence also involved defendant penetrating the victim's vagina with his penis. Although the victim does not explicitly state that defendant penetrated her vagina while she was sleeping, the victim testified that she was told about a third incident in which she had sex with defendant. Specifically, she testified that SF told her that defendant was on top of her. Additionally, this act supposedly occurred in the same time frame as the other charged conduct because both the victim and defendant testified that they met each other in about October 2017 and that they stopped speaking to each other in about January 2018. See *id*. at 100. Furthermore, this evidence was important to the prosecution's case because of the lack of physical evidence that the sexual abuse occurred. See *id*. Additionally, there was little "danger of confusion of the issues, misleading the jury, undue delay, or other considerations mentioned in MRE 403." *Id*. at 101. The uncharged conducted was briefly described by the victim and was only referred to briefly in the prosecution's opening statements when it stated that defendant and the victim had sex *at least* on two occasions. Therefore, it was not necessary that the other-acts evidence be excluded pursuant to the MRE 403 balancing test.

Defendant also argues that he was still denied a fair trial because he was not notified about the admittance of the other-acts evidence. Although defendant correctly argues that MRE 404(b)(2) requires that the prosecution notify defendants about its intention to introduce other-acts evidence at trial, the evidence of the uncharged act was not admissible pursuant to MRE 404(b)(1) but MCL 768.27a(1). MCL 768.27a(1) also requires that the prosecution notify defendants about its intention to admit other-acts evidence in trial. MCL 768.27a(1) specifically states, in pertinent part, as follows:

> If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

There is no evidence in the record that the prosecution ever filed a formal, written notice of its intent to introduce other-acts evidence. However, MCL 768.27a(1) does not require that a

formal, written notice be filed in the trial court or provided to defendant, and such a requirement should not be read into the statute. See *People v Waltonen*, 272 Mich App 678, 685; 728 NW2d 881 (2006). MCL 768.27a(1) instead requires that the prosecution disclose the other-acts evidence to defendant 15 days before trial. There is nothing in the record that indicates that the prosecution failed to comply with this requirement.

In fact, the record indicates the opposite. The victim mentioned that she told the forensic interviewer that SF saw defendant on top of her. While defense counsel questioned the victim about this statement on cross-examination, he also questioned the victim on another statement she made to the forensic interviewer. Specifically, defense counsel asked the victim whether she told the forensic interviewer that she had sex with defendant five times, and the victim agreed that she had. Defense counsel's questioning of the victim indicates that he and defendant were fully aware of the accusations that the victim made against defendant during her interview and were fully prepared to question the victim about those statements. This means that evidence regarding defendant penetrating the victim while she slept was not a true surprise and that defendant had proper notice of the evidence.

Therefore, there is no error in the record. See *Carines*, 460 Mich at 763. The other-acts evidence was admissible pursuant to MCL 768.27a(1). Additionally, the record supports the contention that defendant was aware of the evidence before trial.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he was denied effective assistance of counsel because defense counsel failed to object to the admittance of evidence that he had sex with the victim a third time or at a minimum seek a limiting instruction. We disagree.

"Unpreserved issues concerning ineffective assistance of counsel are reviewed for errors apparent on the record." *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). The defendant has the burden of establishing that he was denied effective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The defendant must "show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018).

For the first requirement, the defendant "must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). The defendant must show that defense counsel's actions were not a "result of reasonable professional judgment." *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy, as is a decision concerning what evidence to highlight during closing argument." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008) (citations omitted). A defense counsel's failure to present evidence at trial can constitute ineffective assistance of counsel if the defendant is deprived of a substantial defense. *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013). Additionally, this Court should not "substitute [its] judgment for that of counsel on matters of trial strategy" or "use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). For the second requirement, the defendant

"must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In this case, defendant failed to prove that defense counsel's failure to object to the admission of other-acts evidence was objectively deficient. The probative value of this evidence was not substantially outweighed by unfair prejudice. See MRE 403. Both the uncharged conduct and the charged conduct were "of the same general category" because both the charged and uncharged conduct involved sexual acts against the same minor. *Duenaz*, 306 Mich App at 101 (quotation marks and citation omitted). Additionally, the uncharged act supposedly occurred in the same time frame. See *id*. at 100. This evidence was also highly probative because of the lack of physical evidence that the sexual abuse occurred. See *id*. Furthermore, even though defendant argues that defense counsel should have objected to the evidence because the prosecution failed to notify defendant of its intent to produce the evidence, the record indicates that defendant did have notice of these allegations against him from the victim. Therefore, evidence that defendant penetrated the victim while she was sleeping was admissible other-acts evidence. Any objection from the prosecution regarding the evidence or notice would have been futile or meritless, and "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201.

Additionally, the record indicates that defense counsel's failure to object to the testimony may have been a matter of trial strategy. See *Trakhtenberg*, 493 Mich at 52. Instead of objecting to the evidence and requesting that the evidence be stricken from the record, defense counsel used the victim's testimony and other statements that the victim made during her forensic interview to draw out the inconsistencies in the victim's story. Defense counsel, referring to the forensic interview, got the victim to admit that she told the forensic interviewer that she had sex with defendant five times even though at trial she claimed it was only two times. Referring to the same interview, defense counsel also got the victim to admit that she told the forensic interviewer that she did not know whether or how many times she had sex with defendant while she was sleeping. Additionally, defense counsel had SF, the friend who told the victim that she saw defendant on top of the victim, testify at trial. SF was unable to provide any testimony in support of the victim's allegation, and in fact, she contradicted the victim's allegations.

Therefore, defendant failed to prove that defense counsel's performance was objectively deficient. See *Randolph*, 502 Mich at 9. Because defendant was unable to prove that defense counsel's performance was objectively deficient, defendant cannot prove that he was denied effective assistance of counsel. See *id*.

## III. EVIDENCE OF REHABILITATION

### A. ADMISSION

Defendant also argues that the prosecution improperly admitted evidence that defendant attended rehabilitation. We disagree.

In this case, during the second interview that defendant had at the police station, defendant confessed to meeting the victim at the end of or beginning of November 2017. He also admitted that he went to rehabilitation right after Thanksgiving and that he had sex with the victim the first time before Thanksgiving. Additionally, he stated that he had sex with the victim a second time after rehabilitation. When asking defendant when he engaged in sexual activity with the victim, Greenville Detective Wayne Dillion, Jr., the officer who interviewed defendant, repeatedly asked defendant if it occurred before or after he went to rehabilitation. At trial, the prosecution played the second interview for the jury.

Additionally, during trial, Detective Dillion testified about what he learned from both interviews with defendant. Detective Dillion testified twice that sometime in November 2017, defendant was in rehabilitation. While defense counsel was questioning Detective Dillion, Detective Dillion testified that defendant told him during the second interview that he found out that the victim was 14 years old after the second time they engaged in sexual intercourse. Defense counsel then asked Detective Dillion, "So where was the time that he had sex with her, after he learned she was 14 from her friend, [SF]?" Detective Dillion replied, "I believe that was the time after he had got out of rehab in November." Defense counsel then continued to question Detective Dillion about the time line of events in this case. Defense counsel asked Detective Dillion, "Are you saying that there was another time after that he admitted to you he had sex with her?" Detective Dillion replied, "No, ma'am, I'm not saying that. I'm saying that the first time was in October. The second time was in November after he got out of rehab."

On the outset, we note that it is unclear whether defendant is challenging the admission of his statement regarding rehabilitation as improper other-acts evidence or simply for being irrelevant and prejudicial. However, the Michigan Supreme Court has long recognized that a defendant's prior statement does not constitute "a prior act." *People v Goddard*, 429 Mich 505, 514-515; 418 NW2d 881 (1988). See also *People v Rushlow*, 179 Mich App 172, 176; 445 NW2d 222 (1989); MRE 801(d)(2). Instead, a defendant's statement is a "statement of a party opponent," and "the admissibility analysis involves instead first determining whether the statement was relevant, and second whether its probative value outweighed its possible prejudicial effect." *Goddard*, 429 Mich at 515. See MRE 401 through MRE 403.

MRE 401 provides that "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In this case, the statements that defendant made regarding his time in rehabilitation were relevant. See MRE 401. The first time the jury heard any evidence regarding rehabilitation was in the recorded interview video. Detective Dillion was questioning defendant about the first time he had sex with the victim, and defendant responded that it was sometime after Halloween but before Thanksgiving because he went to rehabilitation right after Thanksgiving. Defendant's statement regarding rehabilitation was relevant to establishing a time line of when he committed the offenses in this case. See MRE 401.

After defendant himself referred to his time in rehabilitation, defendant's time in rehabilitation was mentioned a couple times by Detective Dillion. However, Detective Dillion only mentioned defendant's time in rehabilitation when asking defendant about when he had sex with the victim a second time, which was at the end of November, after defendant's time in rehabilitation. Detective Dillion's questions about when defendant had sex with the victim that

referred to defendant's time in rehabilitation were admissible because they provided context to defendant's answer about when he had sex with the victim a second time. See *People v Musser*, 494 Mich 337, 354-356; 835 NW2d 319 (2013). Additionally, Detective Dillion's questions were relevant to establishing a time line in this case. See MRE 401. Detective Dillion was referring to a defendant's time in rehabilitation as a reference point that defendant himself provided.

The next time defendant's stay in rehabilitation was mentioned at trial was when defense counsel questioned Detective Dillion about how many times defendant had sex with the victim and when defendant had sex with the victim. On cross-examination, defense counsel questioned Detective Dillion about the two different times defendant stated that he had sex with the victim. Detective Dillion referred to rehabilitation to establish the time line of when defendant had sex with the victim. Detective Dillion's statements about rehabilitation were admissible because they were volunteered statements to a proper question from the prosecution. See *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). Additionally, the mentioning of defendant's time in rehabilitation was relevant to establishing a time line of the offenses that defendant committed in this case. See MRE 401.

Furthermore, the statements regarding defendant's time in rehabilitation survive MRE 403's balancing test. Defendant claims that admitted statements that referred to his time in rehabilitation were unfairly prejudicial to him. The statements referring to defendant's time in rehabilitation were likely prejudicial even though none of the statements or the record ever established what type of rehabilitation defendant attended. However, the statements were admissible because the probative value of the statements was not substantially outweighed by the danger of their unfair prejudice. See MRE 403. The statements Detective Dillion and defendant made referring to defendant's time in rehabilitation were highly probative because they helped establish a time line in this case. Additionally, defendant's time line was highly probative in this case because his time line of when he had sex with the victim corroborated the victim's time line in this case, which helped the jury assess the credibility of the victim's allegations. Furthermore, any question from Detective Dillion referring to defendant's time in rehabilitation was also highly probative because it provided context to defendant's admissions of when he had sex with the victim. See *Musser*, 494 Mich at 356-358.

Therefore, there is no error in the record. See *Carines*, 460 Mich at 763. Defendant's statement regarding his time in rehabilitation was an admission by a party-opponent. See MRE 801(d)(2). It was also relevant to establishing a time line of the offenses that defendant committed in this case, which made defendant's statement highly probative. See MRE 401; MRE 403. Additionally, any mentioning of rehabilitation by Detective Dillion was only used in regard to establishing the time line in this case and providing context to defendant's answers regarding the time line, which again made the reference relevant and probative. See MRE 401; MRE 403.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he was denied effective assistance of counsel because defense counsel failed to object to the admittance of evidence that proved defendant had been to rehabilitation. We disagree.

As stated earlier, defendant's statement in which he refers to his time in rehabilitation was admissible as a party-opponent admission. See MRE 801(d)(2). Defendant's statement was relevant because he made it while explaining how he knew when he had sex with the victim. Defendant was establishing the time line in which he committed the offenses. See MRE 401. Additionally, the statement was admissible because the probative value of the statement was not substantially outweighed by the danger of their unfair prejudice. See MRE 403.

Detective Dillion also mentioned defendant's time in rehabilitation in the video after defendant mentioned it. Anytime Detective Dillion referred to defendant's time in rehabilitation, it was while asking defendant questions about when he had sex with the victim. Detective Dillion's questions were admissible and relevant because they provided context to defendant's answers about when he committed the offenses of which he was charged. See *Musser*, 494 Mich at 356-358. Additionally, the probative value of Detective Dillion's questions was not substantially outweighed by the risk of unfair prejudice. As stated earlier, the statement that Detective Dillion made referring to defendant's time in rehabilitation was highly probative because it helped establish a time line in this case of when defendant committed the offenses of which he was charged, which corroborated the victim's time line.

Because the statements and questions referring to defendant's time in rehabilitation in the recorded interview were admissible, any request from defense counsel to redact the video would have been futile or meritless. See *Ericksen*, 288 Mich App at 201. Defense counsel's performance was not objectively deficient. See *Randolph*, 502 Mich at 9.

Furthermore, defense counsel's failure to move to strike Detective Dillion's statements regarding rehabilitation at trial was likely a matter of trial strategy. See *Trakhtenberg*, 493 Mich at 52. Defense counsel "may have consciously elected not to highlight or focus" on Detective Dillion's statements referring to defendant's stay in rehabilitation. *People v Bosca*, 310 Mich App 1, 37; 871 NW2d 307 (2015). Therefore, defense counsel's failure to object to references to defendant's time in rehabilitation was not objectively deficient. See *Randolph*, 502 Mich at 9. Because defendant failed to prove that defense counsel's performance was objectively deficient, he cannot establish that he was denied effective assistance of counsel. See *id*.

IV. EVIDENCE OF PRIOR INTERACTIONS WITH LAW ENFORCEMENT

A. ADMISSION

Defendant also argues that the prosecution improperly admitted evidence that he had prior interactions with law enforcement. We disagree.

At trial, Detective Dillion testified that defendant called him to set up the first interview. Detective Dillion testified that he knew defendant for several years and that when defendant came down to the police station, he reintroduced himself to defendant. Additionally, as stated earlier, the prosecution played the second interview for the jury. During the second interview, defendant asked Detective Dillion if this situation was "going to be an actual case through Montcalm County." Detective Dillion told defendant that he had to prepare a report for the prosecution and then the prosecution would decide what to do. He told defendant that he would call him and let him know what the prosecution decided to do. Defendant then informed Detective Dillion that if

this situation evolved into an actual case, the police would be unable to find him. He also told Detective Dillion that he was not "going back," and that, before he goes "back behind bars," he needed to take care of his mother.

At the end of the interview, Detective Dillion asked defendant if he had anything else he wanted to tell him. Defendant told Detective Dillion that he did not, and he reiterated that if the situation evolved into a case, he would run away and the police would be unable to find him because he knew everyone in town. He also mentioned the police *always* look for him at his mother's house and at the house of his friend, so he would not be at either location for the police to find him.

During trial, defendant also testified. He denied ever engaging in sexual activity with the victim. He also claimed that during the two interviews, because of his anxiety and anger he told Detective Dillion that he did have sex with the victim. While testifying, defendant also implied twice that he had previously been charged or convicted of the crime arson. The prosecution questioned defendant about whether it was normal for him to lie about doing something illegal and whether he had ever admitted to doing something illegal before this case. Defendant mentioned his "felony arson" in response. The prosecution also asked defendant why he told Detective Dillion during the second interview that he had sex with the victim if it was a lie. He stated the situation was "weird" for him because he had been at the police station before for his arson case.

On the outset, we again note that it is unclear whether defendant is challenging these statements as improper other-acts evidence or simply for being irrelevant and prejudicial. However, as stated earlier, the Michigan Supreme Court has long recognized that a defendant's prior statement does not amount to "a prior act." *Goddard*, 429 Mich at 514-515. See also *Rushlow*, 179 Mich App at 176; MRE 801(d)(2). Instead, a defendant's statement is a "statement of a party opponent," and "the admissibility analysis involves instead first determining whether the statement was relevant, and second whether its probative value outweighed its possible prejudicial effect." *Goddard*, 429 Mich at 515. See MRE 401, 403. Additionally, Detective Dillion's statement that he reintroduced himself to defendant and that they knew each other for quite a few years simply amounts to proper lay witness testimony. See MRE 701. Detective Dillion's statement about previously knowing defendant was also a volunteered statement to a proper question from the prosecution. See *Haywood*, 209 Mich App at 228.

Additionally, the statements that defendant made referring to the time that he previously spent "behind bars" were relevant. See MRE 401. Defendant made the statements, "I'm not going back," and "[b]efore I go back behind bars," right after he threatened to run away if Detective Dillion or the prosecution in the case decided to press charges against him for having sex with the victim. Additionally, defendant made the statement that the police "always go to [my friend's] and my mom's first though," in the middle of telling Detective Dillion that he would flee if the police came to arrest him. Defendant's efforts to influence or coerce Detective Dillion demonstrated defendant's consciousness of guilt of the crimes he committed, which made his statements relevant. See *People v Mock*, 108 Mich 384, 389; 310 NW2d 384 (1981). See also MRE 401. Additionally, Detective Dillion's statement about reintroducing himself to defendant and knowing defendant was made while explaining how he conducted his interview with defendant, which made it relevant to laying the foundation and describing the interview for the jury. See MRE 401.

-10-

Additionally, although defendant argues that those statements were prejudicial, the probative value of those statements were not outweighed by their unfair prejudice. See MRE 403. As stated earlier, defendant made statements about his prior interactions with law enforcement in the middle of telling Detective Dillion that if the police came to arrest him, he would flee. Defendant's statements indicated his consciousness of guilt, which means that defendant's statements were highly probative. See *Mock*, 108 Mich at 389. Additionally, Detective Dillion's statement was probative because it was made while he was describing to the jury how he conducted his first interview with defendant. See MRE 403. Furthermore, if defendant were truly concerned about his admissions and Detective Dillion's statements regarding his prior interactions with the police, defendant himself would not have mentioned at trial, twice, that he was involved in a felony arson case. Neither Detective Dillion nor any of the statements that defendant made in the interrogation video referred to how defendant knew Detective Dillion or the reason defendant had been behind bars. However, defendant took it upon himself to clarify at trial that he was previously involved in a felony arson case.

Therefore, there is no error in the record. See *Carines*, 460 Mich at 763. The statements defendant made about his prior interactions with law enforcement were properly admitted into evidence through the interrogation video. Additionally, Detective Dillion's statements about interacting with defendant at the police station were relevant and not unfairly prejudicial.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he was denied effective assistance of counsel because defense counsel failed to object to evidence regarding defendant's prior interactions with law enforcement. We disagree. As explained, the statements made were admissible. Therefore, defense counsel's failure to advance a meritless argument does not constitute ineffective assistance of counsel. See *Ericksen*, 288 Mich App at 201.

Affirmed.

/s/ Karen M. Fort Hood
/s/ David H. Sawyer
/s/ Deborah A. Servitto