*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN ANDRES CASTILLO,

        Defendant-Appellant.

UNPUBLISHED
March 21, 2024

No. 363149
Oakland Circuit Court
LC No. 2020-274129-FC

Before: GADOLA, C.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of first-degree criminal sexual conduct ("CSC-I") and second-degree criminal sexual conduct ("CSC-II"). The trial court sentenced defendant as a second-offense habitual offender to concurrent prison terms of 14 to 35 years for the CSC-I conviction, and 8 to 22 years for the CSC-II conviction. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant John Andres Castillo was convicted of sexually assaulting an adolescent family member in defendant's apartment on November 30, 2019. The prosecutor presented evidence that before this incident, the victim had a very close relationship with defendant. On November 30, 2019, the victim stayed overnight in the apartment where defendant lived. The victim testified that after she fell asleep in defendant's twin-sized bed, she was awakened by defendant inappropriately touching her. She disclosed the incident to her mother the next day and underwent a sexual assault forensic examination on December 2, 2019, which revealed the presence of defendant's DNA on different areas of her body. The prosecutor also presented other-acts evidence involving defendant inappropriately touching two other adolescent family members.

The defense theory at trial was that defendant did not digitally penetrate the victim, and he did not intentionally touch her breasts for a sexual purpose. Instead, defendant asserted that the child's allegations were inconsistent, and her trial testimony was not credible. Defendant presented two witnesses, defendant's mother and sister, who testified that the victim was acting normally on the morning after the alleged incident and did not want to return home. Defendant

also highlighted the testimony of another family member who was called as a prosecution witness, and who testified that he was a light sleeper and did not hear anything inappropriate as he slept approximately three feet away from defendant and the victim. Defendant also emphasized how the police failed to "investigate" the apartment to collect evidence and failed to interview key witnesses, including the family member in the room during the alleged assault.

As noted, the jury convicted defendant of one count of CSC-I, MCL 750.520b(1)(b) and one count of CSC-II, MCL 750.520c(1)(b), and defendant was sentenced as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 14 to 35 years for the CSC-I conviction, and 8 to 22 years for the CSC-II conviction. This appeal followed.

## II.  OTHER-ACTS EVIDENCE

Defendant first challenges the trial court's decision to allow the prosecutor to present evidence that defendant also sexually assaulted two other adolescent family members in 2019. The evidence was introduced under MCL 768.27a(1), but defendant argues that it should have been excluded under MRE 403 because it was unduly prejudicial. We disagree.

## A.  STANDARDS OF REVIEW

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *Id*. at 251-252 (quotation marks and citation omitted.) "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo . . . ." *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

## B.  ANALYSIS

Under MCL 768.27a(1), "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence. MRE 401. A defendant's propensity to commit a crime makes it more probable that he committed the charged offense. *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012).

The charged offense and the other acts all qualify as listed offenses against a minor. See MCL 768.27a(2). The other-acts evidence was relevant to show defendant's propensity to sexually assault underaged females to whom he had access because of their familial relationship and therefore assisted the jury in weighing the victim's credibility. Indeed, defendant repeatedly sought to impugn the victim's credibility, for example, by highlighting the inconsistencies in her interview statements and trial testimony, and by suggesting that it was inconsistent for her to claim that defendant sexually assaulted her, yet fail to disclose anything to anyone in the apartment the following morning. The defense also argued that the victim's claim was not credible because

defendant's other family member, who is a light sleeper, was in a bed only three feet away and heard nothing. Thus, the probative value of the other-acts evidence was high because it tended to show that defendant had a proclivity toward assaulting young girls.

However, evidence offered under MCL 768.27a is still subject to MRE 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403; *Watkins*, 491 Mich at 481. MRE 403 is not, however, intended to exclude evidence merely because it is "damaging" to the opponent, as any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Instead, it is "only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Id*. (emphasis in the original). Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 75-76; *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002). When applying MRE 403 to evidence in the context of MCL 768.27a, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. Thus, "other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*. Courts should consider the following factors when deciding whether to exclude other-acts evidence under MRE 403 as being overly prejudicial:

> (1) [T]he dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

When weighing the probative value of other-acts evidence, courts should consider the extent to which the other-acts evidence supports the victim's credibility and rebuts any defense attack on the victim's credibility. *Id*. at 491-492.

Despite defendant's arguments, the first *Watkins* factor—similarity between the other act and the charged sexual assault—weighs in favor of admissibility. The other acts and the current offenses are "of the same general category because they involve[d] sex crimes . . . against children." See *People v Duenaz*, 306 Mich App 85, 101; 854 NW2d 531 (2014) (quotation marks and citation omitted). Defendant's victims were all young, adolescent children similar in age when the sexual assaults occurred. Each child was a member of defendant's family, which is how defendant had access to each individual. The charged offenses each involved unwanted sexual contact, which corresponded to the unwanted and unexpected sexual contact involved in the other acts. Although there were differences, most notably that defendant digitally penetrated the victim in this case and touched her breast underneath her clothing, whereas he inappropriately touched the other children over their clothing, each situation involved defendant's opportunistic sexual advances against young family members.

Defendant also challenges the fifth factor from *Watkins*—the lack of reliability of the evidence supporting the occurrence of the other acts. Defendant contends that the testimony of

the other-acts witnesses was not reliable because "no reports were made" by the other young girls until after the disclosure in this case. However, "[i]t is the province of the jury to determine questions of fact and assess the credibility of witnesses. As the trier of fact, the jury is the final judge of credibility." *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998) (citation and quotation marks omitted). Thus, defendant's reliability argument is not persuasive.

Further, contrary to defendant's argument, while the evidence was not legally necessary, the other-acts evidence bolstered the victim's credibility and negated defendant's attack on her credibility at trial. Defendant repeatedly argued at trial that the victim's testimony was not credible because there were no eyewitnesses, particularly the other family member who was also sleeping in the room, to corroborate her claims. While there was evidence that defendant's DNA was recovered from the child's neck and breast swabs, defendant argued that there "was no DNA found to prove that [defendant] penetrated the vaginal opening with his fingers or anything else." Further, there was testimony that defendant and the victim had a very close relationship, cuddled regularly, had slept in the same twin-sized bed that night, and "were in a spooning position." Defendant also argued that according to the prosecutor's expert, DNA can be deposited on another person in a number of ways.

Defendant's arguments are ultimately unavailing. In total, considering the high probative value of the other-acts evidence, its probative value was not substantially outweighed by the danger of unfair prejudice. The other-acts evidence was probative of defendant's intent and propensity to sexually assault his young family members. Moreover, in its final instructions, the trial court gave a cautionary instruction to the jury concerning the proper use of the evidence, thereby limiting the potential for unfair prejudice. In sum, because the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice, the trial court did not abuse its discretion by allowing the evidence at trial.

## III. PROSECUTORIAL MISCONDUCT[1]

Next, defendant argues that the prosecutor improperly shifted the burden of proof during closing argument by repeatedly arguing that there was no evidence that the victim had a motive to lie, which defendant argues implied that defendant failed to provide such a motive, and that defense counsel was ineffective for failing to object to the prosecutor's argument. We disagree.

## A. STANDARDS OF REVIEW

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). As defendant acknowledges, there was no objection to the challenged remarks in the trial court, leaving this claim of prosecutorial misconduct unpreserved. We review unpreserved claims of prosecutorial misconduct for plain error affecting defendant's

---

[1] As we noted in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), "the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals . . . [but] these claims of error might be better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' "

substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). We will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

## B. ANALYSIS

"A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). In addition, "a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof." *Id*. However, a prosecutor is entitled to comment on defense theories or the strength of evidence presented by the defendant, *People v Caddell*, 332 Mich App 27, 71-72; 955 NW2d 488 (2020), and "[a]ttacking the credibility of a theory advanced by a defendant does not shift the burden of proof." *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005). Prosecutors are also permitted to argue from the facts in evidence that a witness is worthy of belief. *People v Cain*, 299 Mich App 27, 36; 829 NW2d 37 (2012), vacated in part on other grounds 495 Mich 874 (2013).

The challenged remarks, viewed in context, were part of a permissible argument regarding credibility and were responsive to defendant's theory that he was not guilty because the victim was not credible. In the opening statement, defense counsel stated that "this case hinges on the credibility of the witnesses," and "there was no inappropriate touching or sexual acts that took place that night." Defendant cross-examined the victim about her account of what occurred, and elicited: (1) that there were inconsistencies in her prior statements and trial testimony, including that she had not previously mentioned during any interview that defendant whispered things in her ear about her being "hot" and "sexy" or that he gave her a pillow to put over her face to muffle the noise; (2) that she did not call her father to pick her up that morning; (3) that she did not disclose anything to any of the people in the apartment during the hours that she was there that morning; and (4) that she did not disclose the incident to her father when defendant dropped her off. In closing argument, defense counsel reiterated and summarized the defense theory. Defendant's opening statement, cross-examination, and closing argument clearly involved challenges to the credibility of the victim's account of the offenses, and the prosecutor was permitted to respond that the victim had no motive to lie. Accordingly, the prosecutor's remarks were not improper and did not shift the burden of proof.

-5-

Because the prosecutor's remarks were not improper, defense counsel's failure to object was not objectively unreasonable, and failure to advance a "futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Furthermore, the record does not support any contention that a reasonable probability exists that, but for counsel's failure to object, the outcome of defendant's trial would have been different. *Nix*, 301 Mich App at 207. The trial court's jury instructions were sufficient to dispel any possible prejudice. See *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011) (stating that juries are presumed to follow the court's instructions). Therefore, defendant has not established a claim of ineffective assistance of counsel for failure to object to the prosecutor's remarks.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that defense counsel was ineffective for failing to move for a mistrial after the victim's mother and the investigating detective made prejudicial remarks that referred to defendant's prior criminal behavior. We disagree.

During defendant's cross-examination of the victim's mother, defense counsel asked her questions seeking to establish that defendant and the victim's father did not previously have a good relationship because the mother dated defendant before dating the victim's father. The mother gave the following response:

*Q*. And before you started dating [the victim's father], you actually dated Mr. Castillo, John Castillo, correct?

*A*. Yes.

*Q*. And how long was that relationship?

*A*. Only a couple months.

*Q*. And you would agree with me that part of the reason that my client and [the victim's father] didn't get along was due to the fact that you had—

*A*. No. Actually, it wasn't. It had nothing to do with it.

\* \* \*

*Q*. So you stated through your marriage, [the victim's father] and John did not have a good relationship, correct?

*A*. Uh-uh. No, he—but there was a lot of things on John, *I mean the child abuse* and everything.

Subsequently, during the prosecutor's direct examination of the investigating detective, he was asked about his investigation and gave the following response:

*Q*. At some point in time, you complete your investigation.

*A.* Correct.

\* \* \*

*Q.* What do you do once it's completed?

*A.* During this—this one, it was completing the interviews that we felt that were needed, and at that point it was a wait, a sit and wait for the CSC kit that had been completed, for that to be finalized and analyzed and for me to get the results back.

*Q.* So you do the part in your investigation, and then you're ultimately waiting on the DNA work to be completed?

*A.* Correct.

*Q.* And that got completed I think sometime in March, we had mentioned, of 2020?

*A.* Yeah, February. End of February, March, yeah.

*Q.* Okay. Once that's completed, what do you do with the case at that point.

*A.* I go over the results. In this case, I read the results from the Oakland County Sheriff's Forensic Lab. *I see that there is a positive hit for John Castillo based on a CODIS*[2] *hit*, and at that point, we have enough information for me to submit my report to the Oakland County Prosecutor's Office for a warrant.

Preliminarily, defendant's assertion that "at least" an evidentiary hearing "is required to inquire into defense counsel's reasons for not making a motion for mistrial" is without merit. Defense counsel discussed both remarks on the record outside the jury's presence and placed her reasons on the record for proceeding without requesting a mistrial, indicating that she had researched the matter and did not believe that the objectionable testimony rose "to the level of a reason for asking for a mistrial." Furthermore, defendant has failed to demonstrate a reasonable probability that any motion for a mistrial would have been successful. A "mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citations omitted). Regarding the mother's testimony, there is nothing "irregular" about defendant receiving a responsive answer to a question posed by his own counsel, and defendant has not persuasively argued that her answer was sufficiently prejudicial to impair his ability to receive a fair trial. The victim's mother did not mention the word "conviction," her reference to "child abuse" was fleeting, and it was plausible that the jury would have understood the remark as referring to the allegations in the current case. The trial court's comments during the discussion of this matter also

---

[2] CODIS is an acronym for the Combined Offender DNA Index System.

indicate that it was highly unlikely that the court would have found that the objectionable testimony rose to the level of warranting a mistrial.

Regarding the detective's testimony, his improper reference to CODIS was not grounds for a mistrial because it was not elicited by the prosecutor's questioning. Instead, the brief remark was part of an unsolicited answer to an otherwise proper question. Generally, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *Haywood*, 209 Mich App at 228. Further, as defense counsel aptly indicated in the trial court, none of the seated jurors had any apparent law enforcement experience, so counsel did not believe that any juror would have deduced that the isolated reference suggested prior criminal activity, particularly considering that the mere mention of "CODIS" does not necessarily mean that there was a conviction. In addition, there was no repeated reference to CODIS, or an indication that defendant was involved in any previous criminal activity or had a prior criminal record, and any such inference on the basis of the prosecutor's question and the detective's response would have been tenuous.

For these reasons, defense counsel's failure to move for a mistrial was not objectively unreasonable, and defendant cannot demonstrate that he was prejudiced by counsel's failure to request a mistrial. See *Ericksen*, 288 Mich App at 201 (stating that counsel cannot be deemed ineffective for failing to advocate a meritless position).

## V. DUE PROCESS

Defendant also argues that his right to due process and a fair trial were violated because the investigating detective failed to "investigate the apartment" and interview the other occupants to locate and preserve potentially exculpatory evidence. Again, we disagree.

## A. STANDARDS OF REVIEW

To properly preserve an issue for appeal, a defendant must timely object in the trial court, even if the right asserted is constitutional in nature. *People v Carines*, 460 Mich 750, 752-753, 762-763; 597 NW2d 130 (1999). Although defense counsel questioned the detective about his failure to interview the occupants of the apartment and inspect the apartment, he did not preserve this issue by arguing that the detective's omissions denied him his right to a fair trial. Therefore, this issue is unpreserved. We review defendant's unpreserved constitutional claim for plain error affecting his substantial rights. *Id*. at 763-764.

## B. ANALYSIS

Defendant's contention that his right to due process was violated because the investigators failed to follow certain investigatory leads is unconvincing because defendant confuses the duty to disclose evidence with a duty to find evidence to disprove a victim's claims. There is a clear distinction between a duty to disclose known exculpatory evidence to the defendant and a duty to develop evidence for the defendant. See *People v Coy (After Remand)*, 258 Mich App 1, 22; 669 NW2d 831 (2003). The authorities cited by defendant do not support his argument that the police and the prosecutor have a duty to investigate on his behalf. For example, although *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment," defendant does not explain what favorable evidence the prosecutor possessed and withheld. Indeed, the gravamen of a *Brady* violation is the prosecutor's failure to disclose favorable evidence within its control unknown to the defense. *People v Chenault*, 495 Mich 142, 153; 845 NW2d 731 (2014). Defendant only argues that police did not "investigate" the apartment or interview its occupants, which *potentially* could have supported his version of events. In the absence of "a showing of suppression of evidence, intentional misconduct, or bad faith," due process does not require the prosecutor to seek and find exculpatory evidence or test evidence for a defendant's benefit. *Coy*, 258 Mich App at 21. Similarly, there is no requirement that the prosecutor negate every theory consistent with a defendant's innocence. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Furthermore, there is no basis in the record for finding any bad faith or intentional misconduct by the police or prosecutor. At trial, the investigating detective acknowledged that he did not go to the apartment or interview any of its occupants, including the family member who was apparently sleeping in the room where the assault occurred. The detective explained that he was not the first responding officer, who is the person who would have made the initial contact at the apartment or the police station. The detective began his investigation the next day after he was given the statements. The allegations, which involved a situation that "was more intimate and closed off" from people, factored into his decisions about who to interview. Furthermore, in light of the circumstances of this case, the decision not to collect the bedsheets for DNA testing was not unreasonable because it was never disputed that defendant and the victim slept in the same twin-sized bed and "spoon[ed]" that night. In addition, defendant was certainly aware that the other family member was asleep in the same bedroom. Moreover, defendant was undoubtedly aware that his mother and sister were in the apartment, and he called both as defense witnesses at trial.

In sum, defendant's right to due process and a fair trial was not violated by the investigating detective's failure to go to the apartment or interview any additional witnesses.

## VI. SCORING OF OFFENSE VARIABLES

In his last claim on appeal, defendant raises two issues concerning the scoring of offense variables during his sentencing, neither of which warrant appellate relief.

First, defendant asserts that remand is required to correct adjustments to the scoring of Offense Variable (OV) 8 (victim asportation or captivity) and OV 10 (predatory conduct) of the sentencing guidelines, which the parties agreed to during sentencing. However, the record discloses that an updated SIR was prepared six days after sentencing and correctly shows that the court assigned zero points for OV 8 and 10 points for OV 10 in accordance with the parties' stipulations at sentencing. Because the SIR has already been updated to reflect the correct scores for OVs 8 and 10, this issue is moot and defendant is not entitled to any additional relief. See *People v Bonilla-Machado*, 489 Mich 412, 416; 803 NW2d 217 (2011).

Defendant also challenges the five-point score for OV 3 (physical injury to a victim), to "preserve[] this issue for future appeals." However, defendant expressly requested a five-point

score for OV 3, thereby waiving appellate review of his substantive claim of a scoring error.[3] *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011).

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray

---

[3] Defendant asserts that the factual basis for the stipulated five-point score was that SC underwent a sexual assault examination. Defendant contends that this Court's decision in *People v Johnson*, 342 Mich App 90; 992 NW2d 668 (2022), supports the five-point score on that basis, but he asserts that the stipulation may no longer legally support the score because the Michigan Supreme Court granted oral argument to consider an application for leave to appeal in the *Johnson* case. See *People v Johnson*, 510 Mich 1118 (2022). After defendant filed his brief, the Michigan Supreme Court denied the application for leave to appeal in *Johnson*. See *People v Johnson*, ___ Mich ___; 997 NW2d 903 (2023). Therefore, even if this issue had not been waived, defendant would not be entitled to appellate relief.